UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TEAMSTERS LOCAL 404 HEALTH SERVICES
& INSURANCE PLAN,

                     Petitioner,

for an order pursuant to § 3102(c) of N.Y. Civil
Practice Laws and Rules to compel disclosure from

KING PHARMACEUTICALS, INC., MERIDIAN
MEDICAL TECHNOLOGIES, INC., and PFIZER
INC.,

                     Respondents.

Civil Action No. 15-cv-04666
(LAK)

---

**TEAMSTERS LOCAL 404 HEALTH SERVICES & INSURANCE
PLAN'S MEMORANDUM OF LAW IN SUPPORT OF REMAND
PURSUANT TO 28 U.S.C. § 1447.**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTS ......................................................................................................................... 4

    A.    The Pfizer/King EpiPen Patent Infringement Litigation Against Teva ........................... 4

    B.    The State Court Petition to Obtain the Settlement Agreement ......................................... 6

ARGUMENT ................................................................................................................ 9

    A.    The Legal Standard ......................................................................................................... 9

    B.    Respondents' Removal Was Untimely Under 28 U.S.C. § 1446 .................................... 10

    C.    Federal Question Jurisdiction Is Lacking .................................................................... 12

    D.    Diversity Jurisdiction Is Equally Lacking ................................................................... 19

    E.    Supplemental Jurisdiction Does Not Apply ................................................................ 20

CONCLUSION ............................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Altman v. Bayer Corp.*,
125 F. Supp. 2d 666 (S.D.N.Y. 2000) .................................................................. 3, 8, 13, 14, 15

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534, 106 S. Ct. 1326 (1986) ................................................................................ 9

*Bryan v. Am. W. Airlines*,
405 F. Supp. 2d 218 (2005) ............................................................................................. 19

*Christianson v. Colt Industries Operating Corp.*,
 486 U.S. 800, 108 S. Ct. 2166 (1988) ................................................................ 13, 14, 16

*Conroy v. Fresh Del Monte Produce, Inc.*,
325 F. Supp. 2d 1049 (N.D. Cal. 2004) ....................................................................... 3, 8, 14

*Dow Chem. Co. v. Exxon Corp.*,
139 F.3d 1470 (Fed. Cir. 1998).......................................................................................... 18

*Franchise Tax Bd. of California v. Construction Laborers Vacation Trust For Southern California*,
463 U.S. 1, 103 S.Ct. 2841 (1983)............................................................................... 13, 16

*FTC. v. Actavis*,
570 U.S. ___, 133 S. Ct. 2223 (2013)........................................................................... 1, 15

*Gulf Offshore Co. v. Mobil Oil Corp.*,
453 U.S. 473, 101 S. Ct. 2870 (1981) ............................................................................... 18

*Hathorn v. Lovorn*,
457 U.S. 255, 102 S. Ct. 2421 (1982)................................................................................ 18

*In re Backer*,
No. 10 Civ. 0862(PGG), 2010 WL 2816789 (S.D.N.Y. July 16, 2010) ........................... 7

*In re Cardizem CD Antitrust Litig.*,
90 F. Supp. 2d 819 (E.D. Mich. 1999) .................................................................... 3, 14, 15

*In re Ciprofloxacin Antitrust Litigation*,
166 F. Supp. 2d 740 (E.D.N.Y. 2001) .................................................................... 3, 8, 14, 15

*In re Lehman Brothers Securities and ERISA Litigation,*
No. 09 MD 02017(LAK), 2012 WL 983561 (S.D.N.Y. Mar. 22, 2012) .................................. 3, 17

*In re Pineapples Antitrust Litigation,*
1:04 MD-1628, 2005 WL 926970 (S.D.N.Y. Apr. 20, 2005) .............................................. 3, 8, 14

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375, 114 S. Ct. 1673 (1994) ........................................................................ 9

*Lennon v. Philip Morris Cos.,*
734 N.Y.S.2d 374 (2001) ........................................................................................ 7

*Mannsfield v. Phenolchemie, Inc.,*
466 F. Supp. 2d 1266 (S.D. Ala. 2006)....................................................................... 17

*Matter of Cohen v. Google, Inc.,*
887 N.Y.S.2d 424 (Sup. Ct. 2009) ............................................................................ 7

*Merrell Dow Pharmaceuticals, Inc. v. Thompson,*
478 U.S. 804, 106 S. Ct. 3229 (1986) ........................................................................ 13

*N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Trust,*
581 F. Supp. 2d 581 (S.D.N.Y. 2008) ........................................................................ 9

*Noel v. J.P. Morgan Chase Bank N.A.,*
918 F. Supp. 2d 123 (E.D.N.Y. 2013) ....................................................................... 17

*Pratt v. Paris Gaslight and Coat Co.,*
168 U.S. 255, 18 S. Ct. 62 (1897).............................................................................. 13

*S. Alabama v. Am. Tobacco Co.,*
168 F.3d 405 (11th Cir. 1999) ................................................................................. 9

*Segal v. Varonis Systems, Inc.,*
601 F. Supp. 2d 551 (S.D.N.Y. 2009) ........................................................................ 9

*Shamrock Oil & Gas Corp., v. Sheets,*
313 U.S. 100, 61 S. Ct. 868 (1941) ........................................................................... 9

*Synergy Advanced Pharmaceuticals, Inc. v. CapeBio, LLC,*
797 F. Supp. 2d 276 (S.D.N.Y. 2011) ........................................................................ 9

*Travelers Indemnity Co. of Am. v. Amada Am. Inc.,*
No. 3:09cv1650 (SRU), 2010 WL 174885 (D. Conn. Jan 14, 2010) .................................. 19

*Travelers Indemnity Co. v. Sarkisian*,
794 F.2d 754 (2d Cir. 1986) ............................................................................ 17

*Universal Motors Grp. of Companies Inc.*,
674 F. Supp. 1108 (S.D.N.Y. 1987)................................................................. 10

*Vassilatos v. Del Monte Fresh Prods.*,
No. 04-80450-Civ-MIDDLEBROOKS/JOHNSON,
2004 U.S. Dist. LEXIS 22123 (S.D. Fla. July 23, 2004)........................... 3, 14

*Williams v. Del Monte Fresh Prods.*,
325 F. Supp. 2d 855 (M.D. Tenn. 2004) ..................................................... 3, 14

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)............................................................................ 10

*Zenith Electronics Corp. v. Exzec, Inc.*,
182 F.3d 1340 (Fed. Cir. 1999)....................................................................... 18

**Statutes**

New York Civil Practice Law and Rules § 3102 ....................................... 1, 2, 6, 7, 19

New York Civil Practice Law and Rules § 304(a) ............................................... 11

New York Civil Practice Law and Rules § 304(c) ............................................... 12

28 U.S.C. § 1331 ............................................................................................... 9, 13

28 U.S.C. § 1332(a) ...................................................................................... 3, 10, 19

28 U.S.C. § 1338(a) ...................................................................................... 12, 13, 15

28 U.S.C. § 1446(b)(1) ................................................................................ 2, 8, 10, 11, 12

28 U.S.C. § 1447(c) ........................................................................................... 1, 4

**Other Authorities**

Vincent C. Alexander, Practice Commentaries to CPLR § 304 ........................... 11, 12

Petitioner, Teamsters Local 404 Health Services & Insurance Plan ("Petitioner"), respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 1447, to remand the Petition for Pre-Complaint Discovery Pursuant to CPLR § 3102(c) ("Petition") to the Supreme Court of the State of New York, New York County. The Petition was untimely and improperly removed to this Court by Respondents King Pharmaceuticals, Inc. ("King"), Meridian Medical Technologies, Inc. ("Meridian"), and Pfizer Inc. ("Pfizer") (collectively, "Respondents"). For the reasons set forth below, the Petition should be remanded to state court with costs and expenses. 28 U.S.C. § 1447(c).[1]

## INTRODUCTION

On or about April 29, 2012, Respondents settled a patent infringement litigation with Teva Pharmaceuticals ("Teva") concerning the epinephrine auto-injector known as EpiPen.[2] The parties reached the settlement at the recommendation of the court after a four-day bench trial. Under the patent infringement settlement agreement ("settlement agreement"), Teva agreed to refrain from marketing a generic version of EpiPen until June 22, 2015. Respondents and Teva have not made the settlement agreement publicly available, and have announced the details of the settlement are confidential.

The EpiPen settlement agreement resembles the typical "reverse payment agreement" routinely employed by branded pharmaceutical companies to resolve patent infringement litigations with potential generic competitors in violation of the antitrust laws. *FTC v. Actavis, Inc.*, 570 U.S. ___, 133 S. Ct. 2223 (2013). The settlement agreement allowed Respondents Pfizer

---

[1] Your Honor's Individual Practice Rules, "Briefs and Motion Papers," provides, in relevant part, as follows: "[a] copy of the complaint should accompany the moving papers." No complaint was filed in this action. To avoid providing duplicate copies, we respectfully refer the Court to Notice of Removal, Exhibit C for a copy of the Petition filed in state court.

[2] *See* Declaration of Michael M. Buchman dated July 15, 2015 ("Buchman Decl."), Exhibit A.

and King to continue selling epinephrine auto-injectors free from competition from a less expensive AB-rated generic version for more than three years. This forced consumers and health insurers to continue purchasing the branded product at a higher price. The settlement agreement constitutes an act of monopolization, a conspiracy to monopolize, and/or a restraint of trade under the competition laws.

On April 30, 2015, Petitioner filed the Petition under New York Civil Practice Law & Rules ("CPLR") § 3102(c) seeking the production of the settlement agreement, as well as any licensing agreement(s), "side deals," or other consideration given to Teva in exchange for its agreement to delay market entry. Rather than produce the requested documents, which exist and can be easily produced, or appear for argument on the Order to Show Cause,[3] Respondents untimely and improperly removed this action.

Respondents were served with the Petition on May 5, 2015.[4] Respondents had thirty (30) days to remove the Petition pursuant to 28 U.S.C. § 1446. Yet Respondents waited forty-two (42) days, until June 16, 2015, to file the Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 1441, 1446, and 1454 ("Notice of Removal").[5] The Notice of Removal was, therefore, twelve (12) days late. 28 U.S.C. § 1446(b)(1).

In their Notice of Removal, Respondents assert that this Court has both federal question and diversity jurisdiction. Respondents contend that the Petition "arise[s] under" federal law

---

[3] Declaration of Raj Gandesha in Support of Removal of Action from State Court Pursuant to 28 U.S.C. §1331, 1132, 1338, 1367, 1441, 1446 & 1454 ("Gandesha Decl."), Exhibit E.

[4] Gandesha Decl. ¶ 3 ("Respondents were served with copies of the Petition and the Coughlin Declaration on May 5, 2015.").

[5] Notice of Removal, *In re Teamsters Local 404 Health Servs. & Ins. Plan*, No. 1:15-cv-04666 (N.Y. Sup. Ct. June 16, 2015).

because it allegedly raises a substantial question of federal patent law.[6]  Similar removal arguments have been routinely rejected in connection with state generic drug and related antitrust litigations.[7]

Respondents also assert that two passing references to the Sherman Act, 15 U.S.C. §§ 1, 2 justify removal.  As this Court held in *In re Lehman Brothers Securities and ERISA Litigation*, No. 09 MD 02017(LAK), 2012 WL 983561, at *6 (S.D.N.Y. 2012) (Kaplan, J.), the presence of a federal issue "is not 'a password' opening federal courts to any state court action embracing a point of federal law." *Id.*

Finally, Respondents contend diversity jurisdiction exists because the amount in question "will undoubtedly" be in excess of $75,000.[8]  28 U.S.C. § 1332(a).  The Petition, however, seeks only an Order compelling the production of the settlement agreement and related documents.  It does not seek monetary damages.  Notably, Petitioner purchased approximately $47,000 worth of EpiPens between April 27, 2012 and February 13, 2015,[9] which is well under the jurisdictional threshold.  Diversity jurisdiction is, therefore, clearly lacking.

In sum, Respondents deliberately removed the Petition knowing such removal was untimely and improper.  Congress has long recognized that disputes over subject matter jurisdiction significantly contribute to the "torrent of litigation" flooding this and other federal

---

[6] *Id.* ¶¶ 20-21.
[7] *See Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 670 (S.D.N.Y. 2000); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 749-51 (E.D.N.Y. 2001); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999); *In re Pineapples Antitrust Litig.*, 1:04 MD-1628, 2005 WL 926970 (S.D.N.Y. 2005); *Williams v. Del Monte Fresh Prods.*, 325 F. Supp. 2d 855, 860 (M.D. Tenn. 2004); *Conroy* v. *Del Monte Fresh Prods.*, 325 F. Supp. 2d 1049, 1056 (N.D. Cal. 2004); *Vassilatos v. Del Monte Fresh Prods.,* No. 04-80450-Civ-MIDDLEBROOKS/JOHNSON, 2004 U.S. Dist. LEXIS 22123 (S.D. Fla. July 23, 2004). Buchman Decl., Exhibit B.
[8] Notice of Removal ¶ 29.
[9] Buchman Decl., Exhibit C.

courts and otherwise overwhelming the judicial system.[10]   It enacted the Judicial Improvements Act of 1988 to expand courts' authority to sanction defendants who improperly remove cases.[11] *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").   Petitioner respectfully requests that this Court remand the Petition to New York Supreme Court, pursuant to 28 U.S.C. § 1447, along with any costs and expenses in an amount this Court deems appropriate under the circumstances.   28 U.S.C. § 1447(c).

## FACTS

### A.      The Pfizer/King EpiPen Patent Infringement Litigation Against Teva

EpiPen is the brand name epinephrine auto-injector manufactured, marketed, and sold by Respondents to treat anaphylaxis—a serious allergic reaction that is rapid in onset and may cause death.   EpiPen is a $1 billion per annum "blockbuster" drug[12] that has become an important product in society today as new laws have been enacted requiring schools and other public places to stock the device on their premises.[13]   Revenue from EpiPen sales can be expected to increase as Respondents no longer sell the product in a single pack, but now only in a twin pack.[14]

---

[10] H.R. Rep. No. 100-889, at 23 (1988), *reprinted in* 1988 U.S.C.C. A. N. 5982, 5984.

[11] Judicial Improvements and Access to Justice Act of 1988, Pub. L. No. 100-702, 102 Stat. 4642 (1988).

[12] Josh Beckerman, *Mylan Posts Higher Profit and Sales*, Wall St. J. (Mar. 2., 2015), *available at* http://www.wsj.com/articles/mylan-posts-higher-profit-and-sales-1425333516 ("Mylan said its full year was 'outstanding,' as the EpiPen Auto-Injector became Mylan's first $1 billion product."). Buchman Decl., Exhibit D.

[13] *E.g.*, Jill Tucker, *Schools Now Required to Stock, Train Staff on Lifesaving EpiPens*, SF Gate (Jan. 7, 2015), *available at* http://www.sfgate.com/education/article/Schools-now-required-to-stock-train-staff-on-5991035.php. Buchman Decl., Exhibit E.

[14] *EpiPen and EpiPen Jr Single Packages Discontinued; To Be Supplied in 2-Paks*, MPR (Aug. 24, 2011), *available at* http://www.empr.com/news/epipen-and-epipen-jr-single-packages-discontinued-to-be-supplied-in-2-paks/article/210245/. Buchman Decl., Exhibit F.

Teva filed an Abbreviated New Drug Application ("ANDA") under the Drug Price Competition and Patent Term Restoration Act ("Hatch-Waxman Act") with the U.S. Food and Drug Administration ("FDA") seeking permission to manufacture, market, and sell an AB-rated (bioequivalent) generic version of EpiPen. Under the Hatch-Waxman Act, the filing of an ANDA (paragraph IV certification) constitutes an act of patent infringement allowing the branded company to commence patent infringement litigation against the ANDA filer.[15]

In August 2009, Respondent King brought suit against Teva in U.S. District Court for the District of Delaware alleging infringement of U.S. Patent No. 7,449,012 (the "'012 Patent"). King later amended the complaint to include a claim of infringement of U.S. Patent No. 7,794,432 (the "'432 Patent").[16] The suit triggered an automatic 30-month Hatch-Waxman stay that statutorily prevented the FDA from approving Teva's application until the 30-month period expired or there was a final judicial determination of patent invalidity, unenforceability, or non-infringement.

Upon completion of a four-day bench trial in March 2012, the court set a post-trial briefing schedule and encouraged the parties to settle the litigation. The following month, King and Teva settled the patent infringement litigation. Despite the strong claims presented at trial by Teva, it agreed to forgo marketing a generic version of EpiPen until more than three years later—in June 2015. This ensured that King and Pfizer would hold on to their lucrative monopoly. This would also allow them to continue charging high prices free from competition from an AB-rated generic competitor. The settlement agreement is not publicly available.

---

[15] 35 U.S.C. § 271(e)(2)(A).
[16] Recognizing it could not prevail on the '012 Patent claims, Respondent King later dropped the '432 Patent infringement claims.

But what did Teva receive in exchange for its agreement to forgo entering this lucrative and rapidly expanding market—a market into which it sought timely entry by filing an ANDA application?

No rational economic actor with the litigation position Teva possessed as well as the time, money, and energy it expended filing its ANDA and seeking timely entry would forgo entering this highly profitable market unless it received valuable consideration for settling its litigation claims. This is especially true concerning an agreement to delay market entry of *more than three years*. As a result of this settlement agreement, King and Teva foreclosed generic entry until June 2015, thereby allowing Respondents to continue charging supracompetitive prices in the absence of a less expensive AB-rated generic product.[17]

**B.      The State Court Petition to Obtain the Settlement Agreement**

Petitioner is a self-insured welfare and benefits plan that provides reimbursement for its members' prescription drug purchases, including EpiPen. Petitioner purchased approximately $47,000 worth of EpiPens between April 27, 2012 and February 13, 2015.[18]

The Petition in this matter was filed on April 30, 2015 in the Supreme Court of the State of New York, New York County, seeking pre-complaint discovery under N.Y. CPLR § 3102(c). Petitioner seeks the production of the settlement agreement and related documents between King and Teva. While Respondents refer to this limited request for pre-complaint discovery under the CPLR as a "fishing expedition,"[19] Petitioner is, in fact, seeking a few discreet documents which

---

[17] Under the Hatch-Waxman Act, the first ANDA filer receives a 180-day market exclusivity period as a reward. 21 U.S.C. §§ 355(j)(5)(B)(iv), 355(j)(5)(D).

[18] Buchman Decl., Exhibit C.

[19] Memorandum of Law in Opposition to Petition for Pre-Complaint Discovery Pursuant to CPLR § 3102(c) at 2, *Teamsters Local 404 Health Servs. & Ins. Plan v. King Pharms.*, No. 1:15-cv-04666 (N.Y. Sup. Ct. June 16, 2015). Gandesha Decl., Exhibit F., p. 2.

clearly exist and can easily be produced with the mere click of a button.  Rather than produce the documents or appear for an Order to Show Cause hearing as Ordered by the state court on May 21, 2015, Respondents have spent a substantial amount of time, money, and energy removing the Petition in an attempt to avoid disclosure.[20]

In order to succeed on its Petition, Petitioner, under New York law, was required to establish the merits of its case.[21]  Petitioner established the merits of its state antitrust and consumer protection claims in its Petition, thereby demonstrating its entitlement to pre-complaint discovery under CPLR § 3102(c). Petitioner made clear that the settlement agreement constitutes a violation of basic competition rules.  In so doing, Petitioner referenced the Sherman Act to demonstrate that New York's Donnelly Act was in harmony with federal law.[22]  Thus, Petitioner, having established that the settlement agreement constitutes an act of monopolization, a conspiracy to monopolize, and a restraint of trade, was entitled to pre-complaint discovery in order to properly frame its complaint as to the consideration Teva received in exchange for its agreement to forgo early market entry.  But, as a result of Respondents' untimely and improper removal, no hearing was held on the Petition.

---

[20] *See, e.g.*, *In re Backer*, No. 10 Civ. 0862(PGG), 2010 WL 2816789, at *11 n.6 (S.D.N.Y. July 16, 2010) ("[T]here is no right to pre-complaint discovery under the Federal Rules of Civil Procedure, and it is the Federal Rules, and not the CPLR, that governs after removal.").

[21] *E.g., Matter of Cohen v. Google, Inc.*, 887 N.Y.S.2d 424, 427 (Sup. Ct. 2009) ("[P]etitioner is entitled to pre-action disclosure of information as to the identity of the Anonymous Blogger, as she has sufficiently established the merits of her proposed cause of action for defamation against that person or persons, and that the information sought is material and necessary to identify the potential defendant or defendants.").

[22] In other words, the Donnelly Act is a "little Sherman Act." *Lennon v. Philip Morris Cos.*, 734 N.Y.S.2d 374, 379 (2001) ("The Donnelly Act is often referred to as the 'little Sherman Act'...." ) (quoting *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988)).

Respondents were served with the Petition and the Coughlin Declaration on May 5, 2015.[23] Respondents' removal papers were filed on June 16, 2015—*forty-two (42) days after Respondents were served*. The federal removal statute requires that a notice of removal be filed within thirty (30) days of receipt of the initial pleading.[24] Simply put, Respondents filed their removal papers *twelve (12) days late*. On this basis alone, remand is required.

Notwithstanding their untimely removal, Respondents would have this Court incorrectly conclude that federal question jurisdiction exists. In an attempt to establish that federal question jurisdiction exists, Respondents cite to *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049 (N.D. Cal. 2004). In that case, however, the court *granted* remand on the grounds that federal question jurisdiction was entirely lacking. Notably, *Conroy* was cited by Judge Berman of this Court as authority for remanding other cases that were improperly removed on federal question grounds back to state court. *In re Pineapples Antitrust Litigation*, 1:04 MD-1628, 2005 WL 926970 (S.D.N.Y. Apr. 20, 2005) (Berman, J.).

Equally notable is the fact that in two earlier generic drug cases involving the drug Cipro—*In re Ciprofloxacin Antitrust Litigation*, 166 F. Supp. 2d 740 (E.D.N.Y. 2001) and *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666 (S.D.N.Y. 2000) (McMahon, J.)—the actions were remanded to state court on the grounds that federal question jurisdiction was lacking. These cases and the generic drug cases cited therein establish a body of remand law precluding removal. In spite of this well-developed body of law, Respondents improperly removed this action to federal court on federal question grounds.

---

[23] Gandesha Decl. ¶ 3 ("Respondents were served with copies of the Petition and the Coughlin Declaration on May 5, 2015.").
[24] 28 U.S.C. § 1446(b)(1).

Respondents also improperly removed this case on diversity jurisdiction grounds. Respondents would have this court mistakenly conclude that diversity jurisdiction exists because the jurisdictional amount in question is over $75,000. It is not. Petitioner's purchases between April 27, 2012 and February 13, 2015 are approximately $47,000.[25] Diversity jurisdiction is, therefore, lacking. Accordingly, Petitioner respectfully requests that this Court grant this motion to remand because Respondents' removal was both untimely and improper.

## ARGUMENT

### A.      The Legal Standard

Federal courts are courts of limited jurisdiction.[26] A case can be removed from state to federal court on federal question or diversity jurisdiction grounds.[27] It has been universally accepted that federal removal statutes are to be strictly construed, and there is a "strong presumption" against removal.[28] A case must be remanded if there is any doubt regarding removability.[29] The removing party bears the burden of proving the propriety of removal.[30] "If the removing party cannot demonstrate federal jurisdiction by competent proof, the removal was in error and the district court must remand the case to the court in which it was filed."[31]

---

[25] Buchman Decl., Exhibit C.

[26] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331 (1986).

[27] 28 U.S.C. §§ 1331, 1441.

[28] *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S. Ct. 868, 872 (1941); *Synergy Advanced Pharmaceuticals, Inc. v. CapeBio, LLC*, 797 F. Supp. 2d 276, 281-82 (S.D.N.Y. 2011) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir.1994); *N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Trust*, 581 F. Supp. 2d 581, 582 (S.D.N.Y. 2008).

[29] *See Synergy Advanced Pharmaceuticals, Inc. v. CapeBio, LLC*, 797 F. Supp. 2d 276, 282 (S.D.N.Y. 2011) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir.1994); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

[30] *Synergy Advanced Pharmaceuticals, Inc.*, 797 F. Supp. 2d at 282 (S.D.N.Y. 2011) (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

[31] *Id.*; *see Segal v. Varonis Systems, Inc.*, 601 F. Supp. 2d 551, 553 (S.D.N.Y. 2009).

**B.      Respondents' Removal Was Untimely Under 28 U.S.C. § 1446**

The removal of this action from state court was untimely.  28 U.S.C. §1446(b)(1).  Section

1446(b)(1) provides, in relevant part, as follows:

> The notice of removal of a civil action or proceeding shall be filed *within 30 days after the receipt* by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

*Id.* (emphasis added).

"[A]n initial document, by whatever name, which contains enough information to allow

defendant to 'intelligently ascertain removability' qualifies as an initial pleading under the federal

removal statute." *Universal Motors Grp. of Companies Inc. v. Wilkerson*, 674 F. Supp. 1108, 1112

(S.D.N.Y. 1987); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 198 (2d Cir. 2001)

("The history and text of section 1446(b) clearly make the defendant's receipt of 'the initial

pleading' the relevant triggering event, which is any pleading (and not necessarily the complaint)

containing sufficient information to enable the defendant to intelligently ascertain the basis for

removal.").

In this case, Respondents were served with the Petition and the Coughlin Declaration on

May 5, 2015.  *See* Notice of Removal ¶ 8; Gandesha Decl. ¶ 3.  On June 16, 2015, Respondents

untimely removed this action on federal question and diversity grounds.[32]  Respondents' filing

establishes that they could "intelligently ascertain removability" from the petition.  *Universal*

*Motors Grp. of Companies Inc.*, 674 F. Supp. at 1112.

---

[32] *See* Notice of Removal ¶ 19 ("[T]his Court has federal-question jurisdiction because the Coughlin Declaration expressly alleges violations of federal antitrust statutes . . . ."); *id.* ¶ 20 ("[F]ederal question jurisdiction exists because the Petition raises claims that arise under the federal patent laws.").  Respondents also assert removal was appropriate based upon diversity jurisdiction.  *Id.* ¶ 28 ("[D]iversity of citizenship as required by 28 U.S.C. §§ 1332(a)(1) exists among the parties to this action.").

The removal of this action is untimely. Respondents filed their Notice of Removal on June 16, 2015—forty-two (42) days after being served with the Petition and the Coughlin Declaration on May 5, 2015. Notice of Removal ¶ 8; Gandesha Decl. ¶ 3. Because Respondents filed their Notice of Removal forty-two (42) days after they were served, *the Notice of Removal is twelve (12) days late*. 28 U.S.C. § 1446(b)(1). Thus, this proceeding should be remanded to New York State Supreme Court, New York County on the ground the Respondents' removal is untimely.

In their Notice of Removal, Respondents suggest that their time to remove was triggered by Petitioner's Order to Show Cause, but that argument is based on outdated law and should be rejected. Respondents assert that "[u]nder New York Law . . . a 'special proceeding' . . . is commenced by service of either a notice of petition or order to show cause." Notice of Removal ¶ 7. Respondents' position is misplaced as they rely on outdated cases and outdated versions of the CPLR.[33] Today, CPLR § 304(a) provides: "[a] special proceeding is commenced by *filing a petition* in accordance with rule twenty-one hundred two of this chapter" (emphasis added).[34] "[F]iling shall mean the delivery of the summons with notice, summons and complaint *or petition* to the clerk of the court in the county in which the action or special proceeding is brought . . . ."

---

[33] Under those previous versions of the CPLR, "the filing of the petition in a special proceeding had to be accompanied by a notice of petition or order to show cause, *but this was changed for proceedings commenced after November 2001* due to logistical problems caused by the methodology." Vincent C. Alexander, Practice Commentaries to CPLR § 304, C304:1 ¶ 2 (emphasis added).

[34] CPLR § 2102 provides that "(a) Except where otherwise prescribed by law or order of court, papers required to be filed shall be filed with the clerk of the court in which the action is triable. In an action or proceeding in supreme or county court and in a proceeding not brought in a court, papers required to be filed shall be filed with the clerk of the county in which the proceeding is brought[;] (b) A paper filed in accordance with the rules of the chief administrator or any local rule or practice established by the court shall be deemed filed. Where such rules or practice allow for the filing of a paper other than at the office of the clerk of the court, such paper shall be transmitted to the clerk of the court[;] (c) A clerk shall not refuse to accept for filing any paper presented for that purpose except where specifically directed to do so by statute or rules promulgated by the chief administrator of the courts, or order of the court." C.P.L.R. § 2102.

CPLR § 304(c) (emphasis added).  As the Commentaries to the CPLR note, "the moment of commencement of a special proceeding is the *filing of the petition*."  Vincent C. Alexander, Practice Commentaries to CPLR § 304, C304:1 ¶ 2 (emphasis added).  It is, therefore, clear that Respondents filed their notice of removal well outside of the thirty-day (30) time period required by 28 U.S.C. §1446(b)(1).  Accordingly, this proceeding should be remanded to New York State Supreme Court, New York County.

### C.    Federal Question Jurisdiction Is Lacking

#### 1.    Petitioner's Claims Do Not Arise Under Federal Patent Law

In their removal papers, Respondents contend that federal question jurisdiction exists "because Petitioner's claims necessarily require an adjudication of the scope and validity of Respondents' EpiPen patents."  Notice of Removal ¶ 23.  Respondents would have this Court mistakenly conclude that this proceeding "will require an interpretation of the scope and validity of Respondents' '012 and '432 EpiPen patents."  *Id.*  Respondents contend Petitioner's "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well pleaded claims."  Notice of Removal ¶ 20. This is incorrect and the removal was improper.

Section 1338(a) provides that the "district courts shall have original jurisdiction of any civil action *arising under any* Act of Congress relating to patents . . . Such jurisdiction shall be exclusive of the courts of the states in patent cases." 28 U.S.C. § 1338(a) (emphasis added). Section 1338(a), however, does not:

> deprive the state courts of the power to determine questions arising under the patent laws, but only of assuming jurisdiction of 'cases' arising under those laws.  There is a clear distinction between a case and a question arising under the patent laws.  The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the patent laws as a ground for a recovery.  Of such the state courts have no

jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals."

*Pratt v. Paris Gaslight and Coat Co.*, 168 U.S. 255, 259, 18 S. Ct. 62, 64 (1897).

Under the well-pleaded complaint rule, a defendant may not remove a case to federal court unless plaintiff's complaint establishes that the case "arises under" federal law within the meaning of § 1331. *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust For Southern California*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846-47 (1983).

"[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813, 106 S. Ct. 3229, 3234 (1986). The federal question must be both "necessary" to a resolution of the case, and it must be "substantial." *Id.* The U.S. Supreme Court had occasion to consider when an action "arises under" the patent laws. In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808-09, 108 S. Ct. 2166, 2173 (1988), the Supreme Court established a two-part test to decide which cases "arise under" § 1338(a) when it held:

> [section] 1338(a) jurisdiction . . . extend[s] only to those cases in which a *well-pleaded complaint* establishes either that federal patent law *creates the cause of action* or that the plaintiff's right to relief *necessarily depends* on resolution of a *substantial question of federal patent law*, in that patent law is a necessary element of one of the well-pleaded claims.

(emphasis added). The Court further stated that it is not "sufficient that a well-pleaded claim alleges a single theory under which resolution of the patent law question is essential." *Id.* at 810. Thus, "a claim supported by alternative theories in the complaint may not form the basis for §1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.*

*Christianson*, therefore, holds that remand is required unless each and every theory of liability advanced by plaintiffs depends upon resolution of a patent law question. *Id.*; *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 670 (S.D.N.Y. 2000) ("If there is any way that plaintiff could

13

prevail without resolving a substantial question of federal patent law, the complaint must be remanded."). In other words, patent law must be essential to every theory of recovery alleged by a plaintiff for an action to stay in federal court. *Id.* Succinctly stated, *Christianson* and its progeny[35] preclude, rather than authorize, removal in this case.

In *Altman* plaintiff alleged that defendants Bayer Corporation, Barr Laboratories, and The Rugby Group, Inc. violated New York General Business Law §§ 340 ("Donnelly Act") and 349 by agreeing to pay defendants Barr and Rugby $49 million, and additional payments of $24.5 million per year to Barr, in exchange for Barr's agreement to refrain from introducing and marketing a generic version of Cipro. *Altman*, 125 F. Supp. 2d at 668. Defendants similarly removed the *Altman* case to federal court, maintaining that an essential element of plaintiff's state law antitrust claim requires resolution of a substantial question of patent law under 28 U.S.C. §

---

[35] *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 670 (S.D.N.Y. 2000) (no removal under *Christianson*); *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 166 F. Supp. 2d 740, 749-51 (E.D.N.Y. 2001) (no removal under *Christianson* if plaintiffs have pleaded "at least one theory under which their claims for relief may be resolved without determining the validity of the patent"); *In re Cardizem CD Antitrust Litigation*, 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999) (granting motions to remand where claim raised did not require resolution of patent issue); *In re Pineapples Antitrust Litigation*, 1:04 MD-1628, 2005 WL 926970 (S.D.N.Y. Apr. 20, 2005) (remand granted because patent law is not essential to each of the indirect purchaser actions); *Williams v. Del Monte Fresh Products Co.*, 325 F. Supp. 2d 855, 860 (M.D. Tenn. 2004) ("Plaintiff presents at least one theory of recovery as to each violation alleged that does not require adjudication of a federal question, and per the ruling in *Christianson*, because there is a theory of the case that does not implicate federal law, it should be remanded to state court."); *Conroy v. Del Monte Fresh Products Co.*, 325 F. Supp. 2d 1049, 1056 (N.D. Cal. 2004) (The "alleged acts of fraud and misinformation do not implicate Defendants' patent rights; they implicate Defendants actions in conducting business, in competing with other pineapple growers and sellers, and in inflating pineapple prices. Under the facts alleged in the Complaint, Plaintiff would be entitled to relief on each and every of her causes of action without resolution of patent law issues."); *Vassilatos v. Del Monte Fresh Products Co.*, 04-80450-Civ-MIDDLEBROOKS/JOHNSON, 2004 U.S. Dist. LEXIS 22123 (S.D. Fla. July 23, 2004) ("There are no predominating issues of patent law necessary to the resolution of this case. The Court will not read a federal cause of action into what is otherwise a well pleaded complaint for common-law or statutory claims. The Plaintiff can prove fraudulent action in obtaining a patent as well as intent to defraud without analyzing the validity of [Defendants'] patents."). Buchman Decl., Exhibit B.

1338(a).  More specifically, Defendants asserted that to prove injury-in-fact plaintiff must show that Bayer's patent for the compound ciprofloxacin was invalid.  *Id.*  Remanding the *Altman* action to state court, Judge McMahon held Plaintiff's state antitrust and consumer protection claims alleging collusion between the branded manufacturer and the generics *did not* necessarily depend on a question of federal patent law.  The same is true here.

In this proceeding, Petitioner merely states, in order to establish the merits of a claim to warrant pre-complaint discovery under the CPLR, that the payment of some form of consideration from the branded company to the generic to induce the generic not to enter the market constitutes a restraint of trade, monopolization, and an unfair or deceptive act or practice under New York law.  Those are precisely the same types of allegations asserted in *Altman*, *Cipro*, and *Cardizem CD*, where remand was granted with regard to New York and other state law claims.  Remand was granted in those cases because, as here, resolution of a substantial question of federal patent law *is not* a required element of every theory of recovery.  Petitioner can prevail under New York Law without showing—and without the Court resolving—any substantial question of federal patent law.[36]  Lest there be any doubt, the U.S. Supreme Court recently held in *Actavis* that district courts need not rule on invalidity of the patent because the size of the payment may serve as a surrogate. *FTC. v. Actavis*, 570 U.S. ___, 133 S. Ct. 2223, 2237-38 (2013) ("[T]he size of the unexplained reverse payment can provide a workable surrogate for a patent's weakness, all without forcing a court to conduct a detailed exploration of the validity of the patent itself.").  Thus, it is patently clear that federal question jurisdiction is lacking.

---

[36] *Altman,* 125 F. Supp. 2d at 670.

In sum, the Petition *does not* "necessarily require an adjudication of the scope and validity of Respondents' ['012 and '432] EpiPen® patents."[37]  Moreover, patent law is not a necessary element of the Petition.  *See Christianson*, 486 U.S. at 809.  There is no issue of patent invalidity for this Court to resolve, and, therefore, no "substantial federal question."  At best, the patent issues raised by Respondents are *affirmative defenses* which do not create a basis for removal.[38]  Accordingly, the Petition does not "arise under" federal patent law and must be remanded.

2.  Two Passing References to the Sherman Do Not Create Basis for Removal

Respondents, in their Notice of Removal, assert federal jurisdiction exists because Petitioner alleges violations of the Sherman Act.  Notice of Removal ¶ 1.  Respondents "cherry pick" from the state court-filed Petition to create the impression that Petitioner is alleging a claim under federal law, when that is simply not the case.  What the state court-filed Petition actually says, and what Respondents fail to include in their truncated citation, is that Petitioner's claims arise under state law.[39]

The only purpose in referencing the Sherman Act was to demonstrate the meritorious nature of the *state law* antitrust claims while demonstrating that the state laws are entirely consistent with federal law.  The mere reference to the Sherman Act twice for this purpose to

---

[37] Notice of Removal ¶ 23.

[38] *Christianson*, 486 U.S. at 809 ("[A] case raising a federal patent law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in Plaintiffs' complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" (quoting *Franchise Tax Board*, 463 U.S. 1, 14, 103 S. Ct. 2841, 2848 (1983))).

[39] Notice of Removal ¶ 19 ("[T]his Court has federal-question jurisdiction because the Coughlin Declaration expressly alleges violations of federal antitrust statutes: 'The [EpiPen® Patent Settlement] Agreement is designed to maintain Respondents' monopoly in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.'").  However, the full sentence of the Petition reads: "The Teva Agreement is designed to maintain Respondents' monopoly in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, *and New York's Donnelly Act, N.Y. Gen. Bus. Law § 340*."  Coughlin Decl. ¶ 36 (emphasis added).

establish that the New York Donnelly Act is a "little Sherman Act" is hardly a valid basis for removing this proceeding to federal court.  Petitioner was not asserting a cause of action under federal law in state court.  Even if the Petition could be so construed, as Respondents contend, that is not a valid basis for removal as "a plaintiff is free to ignore the federal question and pitch his claim on the state ground" to defeat removal.[40]  Indeed, as this Court made clear in *Lehman Bros.*, the mere:

> presence or possible presence of a federal issue is not 'a password' opening federal courts to any state court action embracing a point of federal law. The question is, does a state law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. In other words, the determination of the state law claim 'necessarily' must require resolution of the federal issues. The federal issue must be actually disputed and substantial. And federal resolution of the case must be appropriate given considerations of federalism.

*Lehman Bros. Securities Litigation. and ERISA Litigation*, 11 Civ. 384(LAK), 2012 WL 983561 (S.D.N.Y. Mar. 22, 2012) (Kaplan, J.)

Accordingly, the mere presence of the words "Sherman Act" in the Petition do not create the "password" for federal jurisdiction concerning a proceeding filed in state court for pre-complaint discovery in which the federal and state laws are in harmony and no determination of the state law claim requires resolution of a federal issue.

3. Collateral Patent Issues May Be Adjudicated in State Court

State courts are not forbidden from addressing collateral patent issues.  The U.S. Supreme Court has recognized that "even a finding of exclusive federal jurisdiction over claims arising

---

[40] *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir. 1986) (citation omitted); *Noel v. J.P. Morgan Chase Bank N.A.*, 918 F. Supp. 2d 123 (E.D.N.Y. 2013); *see also Mannsfield v. Phenolchemie, Inc.*, 466 F. Supp. 2d 1266, 1269 (S.D. Ala. 2006) ("The mere fact that a federal statute or regulation may be implicated and even require some interpretation is not sufficient to create federal jurisdiction.").

under a federal statute usually 'will not prevent a state court from deciding a federal question collaterally.'" *Hathorn v. Lovorn,* 457 U.S. 255, 266, 102 S. Ct. 2421, 2428-29 (1982) (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 483 n.12, 101 S. Ct. 2870, 2878 n.12). "For example, the state courts may decide a variety of questions involving the federal patent laws." *Id*. at n.18.

Other courts have followed suit. In *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998), the Federal Circuit addressed the ability of the state courts to adjudicate state law matters containing collateral patent issues, ruling that:

> [t]he principal problem presented to the court is whether state courts, or federal courts adjudicating state law claims, may hear a state law tort claim . . . that implicates the patent law issue of inequitable conduct or, alternatively, whether such a claim is preempted by the federal patent law. We hold that such a state law tort claim is not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addresses by federal law.

The court further held that:

> [w]hile it is true that, under the facts of this case, the "state court" would be required to make a determination of an issue of patent law in reaching its judgment on the underlying tort, this determination would only be ancillary to its central purpose. In any case, it is well established that a state court has authority to adjudicate patent questions so long as the action itself does not arise under the patent laws.

*Id.* at 1475 (footnote omitted).

Similarly, in *Zenith Electronics Corp. v. Exzec, Inc.* 182 F.3d 1340, 1351 (Fed. Cir. 1999), the Federal Circuit again addressed this issue specifically noting that bad faith patent enforcement can lead to liability under state law:

> Significantly, in those decisions we held that the state law claims were not preempted by the patent laws and that our prior decision in *Concrete Unlimited* was not to the contrary. In particular, in *Dow Chemical* we held that state unfair competition claims asserted against a patentee for tortuous interference with actual and prospective contractual relations were not preempted by the patent laws, despite the fact that the claims relied on proving that the

18

patent was obtained through inequitable conduct.  139 F.3d at 1473, 46 USPQ2d at 1123. The court reasoned that the claims are not preempted by the patent law remedy for inequitable conduct-*i.e.,* unenforceability of the patent-because the state law causes of action did not clash with the objectives of the patent laws, and because they included additional elements not found in the patent law remedy.  *See Id.* at 1473, 1475, 1477, 46 USPQ2d at 1123-26.  In reaching this decision, we distinguished *Concrete Unlimited*, on the ground that the case involved 'good faith enforcement of a patent,' whereas the claims in *Dow Chemical* were premised on bad faith patent enforcement, the patentee allegedly having known that the patent was unenforceable due to inequitable conduct.  *Id.* at 1476, 46 USPQ2d at 1126.  We emphasized that the state tort claims at issue were premised on 'bad faith misconduct in the marketplace.'  *Id.* at 1477, 46 USP2d at 1126.  Bad faith marketplace conduct played a central role in our *Hunter Douglas* decision as well.  In that case we opined that there is not conflict-type preemption of various state law claims based on publicizing an allegedly invalid and unenforceable patent in the marketplace as long as the claimant can show that the patent holder acted in bad faith in publication of the patent. *See Hunter Douglas,* 153 F.3d at 1336-37, 47 USPQ2d at 1782.

Accordingly, even if some patent issues need to be addressed, that does not preclude a state court from entertaining such issues.

**D.    Diversity Jurisdiction Is Equally Lacking**

Under 28 U.S.C. § 1332, district courts have diversity jurisdiction when the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  *Id.* The removal of the Petition on diversity grounds was entirely improper.  The Petition did not state a claim for damages.  The only relief requested was an Order requiring the disclosure of the King/Teva patent infringement settlement agreement and related documents.  There was no monetary component to the Petition at all and none was allowed under CPLR § 3102.[41]  Yet, Respondents blindly contend that this "action will undoubtedly claim an amount at issue greatly in excess of the $75,000 monetary threshold set out in 28 U.S.C. § 1332(a)."[42]  This contention is entirely baseless.  Petitioner purchased approximately $47,000 of EpiPens.[43]  Respondents also

---

[41] *Bryan v. Am. W. Airlines*, 405 F. Supp. 2d 218, 222 (2005); *accord Travelers Indemnity Co. of Am. v. Amada Am. Inc.*, No. 3:09cv1650 (SRU), 2010 WL 174885 (D. Conn. Jan 14, 2010).
[42] Notice of Removal ¶ 29.
[43] Buchman Decl., Exhibit C.

baselessly assert that the Petition is essentially a class action involving millions of dollars. Notice of Removal ¶ 30. Nowhere in the Petition does Petitioner allege it is acting as a representative of a class. To the contrary, Petitioner was merely seeking an Order compelling Respondents to produce a limited set of existing documents *to it individually*. Gandesha Decl., Exhibit A. ¶ 2 & p. 10, WHEREFORE clause. Accordingly, there is no basis to assert diversity jurisdiction.

###### E.   Supplemental Jurisdiction Does Not Apply

In a last-ditch attempt to argue that this Court possesses jurisdiction over this proceeding, Respondents claim "[t]o the extent (if any) that Petitioner's purported claims against Respondents are not based on federal law, they are within the Court's supplemental jurisdiction, 28 U.S.C. § 1367, and are removable pursuant to 28 U.S.C. § 1441." Notice of Removal ¶ 31.

Supplemental jurisdiction is the authority of a federal court to hear additional claims substantially related to a federal claim even though the court would lack the subject matter jurisdiction to hear the additional claims independently. *See* 28 U.S.C. § 1367. A federal claim must exist to hear the state law claim. There is no predicate federal claim here. Accordingly, supplemental jurisdiction cannot attach.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court remand the Petition to New York Supreme Court, New York County, pursuant to 28 U.S.C. § 1447, with costs and expenses incurred in an amount the Court deems appropriate under the circumstances.

Dated:  July 16, 2015
New York, New York

Respectfully submitted,

**MOTLEY RICE LLC**


By: /s/ Michael M. Buchman

Michael M. Buchman
Alex R. Straus
600 Third Avenue, Suite 2101
New York, NY 10016
mbuchman@motleyrice.com
astraus@motleyrice.com
(212) 577-0050
Attorneys for Petitioner
*Teamsters Local 404 Health Services and Insurance Plan*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Patrick J. Coughlin
30 Vesey Street, Suite 200
New York, NY 10007
(212) 693-1058
patc@rgrdlaw.com
Attorney for Petitioner
*Teamsters Local 404 Health Services and Insurance Plan*