**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TEAMSTERS LOCAL 404 HEALTH SERVICES
& INSURANCE PLAN

Petitioner,

for a an order pursuant to 3102(c) of the Civil
Practice Laws and Rules to compel disclosure from

KING PHARMACEUTICALS, INC., MERIDIAN
MEDICAL TECHNOLOGIES, INC., and PFIZER
INC.,

Respondents.

Case No.: 1:15-cv-04666

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO
PETITIONER TEAMSTERS LOCAL 404 HEALTH SERVICES &
INSURANCE PLAN'S MOTION TO REMAND**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

ARGUMENT ........................................................................................................ 3

    I.    PETITIONER'S CPLR § 3102(c) PETITION WAS TIMELY REMOVED TO THIS COURT UNDER 28 U.S.C. § 1446(b) ......................................................... 3

        A.    The Time To Remove Petitioner's CPLR § 3102(c) Special Proceeding Was Triggered By Formal Service Of The Petition And Order To Show Cause .......... 4

        B.    Respondents Were Not Properly Served With The Petition Until They Accepted Service On May 22, 2015 ....................................................... 12

    II.    REMOVAL IS PROPER BECASE PETITIONER'S CLAIMS ARISE UNDER FEDERAL LAW ......................................................................................... 13

        A.    Removal Is Proper Under 28 U.S.C. § 1331 Because Petitioner Expressly Invokes Federal Antitrust Law .............................................................. 14

        B.    Removal Is Proper Under 28 U.S.C. § 1338(a) Because Petitioner Alleges Claims That Arise Under Federal Patent Law .................................................... 19

    III.    PETITIONER'S CPLR § 3102(c) PETITION WAS PROPERLY REMOVED TO THIS COURT PURSUANT TO 28 U.S.C. § 1441(b) BASED ON DIVERSITY OF CITIZENSHIP ............................................................................................. 27

    IV.    PETITIONER'S REQUEST FOR COSTS AND EXPENSES SHOULD BE DENIED ............................................................................................. 32

CONCLUSION ................................................................................... 33

ii

## <u>TABLE OF AUTHORITIES</u>

### CASES

*3CG, LLC v. Textron, Inc.*,
   4:11-CV-00880, 2011 WL 3627682 (M.D. Pa. Aug. 16, 2011) ...............................................29

*A.F.A. Tours, Inc. v. Whitchurch*,
   937 F.2d 82 (2d Cir. 1991)......................................................................................................29

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
   986 F.2d 476 (Fed. Cir. 1993)..................................................................................................24

*Altman v. Bayer Corp.*,
   125 F. Supp. 2d 666 (S.D.N.Y. 2000)......................................................................................25

*Animal Science Prods., Inc. v. Seville Flexpack Corp.*,
   9:11-CV-55, 2011 WL 2600970 (E.D. Tex. Jun. 29, 2011) .....................................................30

*Asher v. Abbott Labs.*,
   737 N.Y.S.2d 4 (1st Dep't 2002) .............................................................................................29

*Astoria Equities 200 LLC v. Halletts A Dev. Co., LLC*,
   47 Misc.3d 171, 996 N.Y.S.2d 516 (N.Y. Sup. 2014)...............................................................9

*Barnhart v. Federated Dept. Stores, Inc.*,
   04 Civ. 3668(JGK), 2005 WL 549712 (S.D.N.Y., Mar. 8, 2005) ............................................13

*Billy Baxter, Inc. v. Coca-Cola Co.*,
   431 F.2d 183 (2d Cir. 1970).....................................................................................................20

*CA 79-3411 Westmoreland Hospital Assoc. v. Blue Cross of W. Penn.*,
   605 F.2d 119 (3d Cir. 1979).....................................................................................................18

*In re Cardizem CD Antitrust Litig.*,
   90 F. Supp. 2d 819, 839 (E.D. Mich. 1999)............................................................................26

*Christian, Klein, & Cogburn v. Nat. Assoc. of Sec. Dealers, Inc.*,
   970 F. Supp. 276 (S.D.N.Y. 1997)......................................................................................8, 11

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800, 108 S. Ct. 2166 (1988)........................................................................15, 19, 24

*In re Cipro Cases I & II,*
No. S198616, 2015 WL 2125291 (Cal. May 7, 2015).................................................23

*In re Ciprofloxacin Hydrochloride Antitrust Litig.,*
166 F. Supp. 2d 740 (E.D.N.Y. 2001) .......................................................................25

*Cohen v. Google, Inc.,*
25 Misc. 3d 945, 887 N.Y.S.2d 424 (N.Y. Sup. 2009).............................................14

*Commonwealth Elec. Inspection Servs., Inc. v. Town of Clarence,*
6 A.D.3d 1185, 776 N.Y.S.2d 687 (4th Dep't 2004).................................................15

*Conroy* v. *Del Monte Fresh Produce, Inc.,*
325 F. Supp. 2d 1049 (N.D. Cal. 2004) ...................................................................26

*CoreComm-ATX, Inc. v. AT&T Corp.,*
CIV.A. 02-1890, 2002 WL 1023155 (E.D. Pa. May 22, 2002)................................29

*Correnti v. Suffolk County Dist. Attorney's Office,*
34 A.D. 3d 578, 824 N.Y.S.2d 382 (2d Dep't 2006).......................................7, 10, 13

*Doron Precision Sys., Inc., v. FAAC, Inc.,*
423 F. Supp. 2d 173 (S.D.N.Y. 2006).......................................................................20

*Dow Chemical Co. v. Exxon Corp.,*
139 F.3d 1470 (Fed. Cir. 1998)................................................................................24

*Dublin Worldwide Prod. (USA) v. Jam Theatricals Ltd.*
162 F. Supp. 2d 275 (S.D.N.Y. 2001).................................................................14, 27

*In re Financial Guar. Ins. Co.,*
40 Misc.3d 1220(A), 975 N.Y.S.2d 709 (N.Y. Sup. 2013) .......................................9

*Fleming v. AC Square, Inc.,*
No. 5:11-cv-01830 EJD (PSG), 2011 WL 3420595 (N.D. Cal. Aug. 4, 2011) .........17

*Forest v. S. Farm Bureau Life Ins. Co.,*
918 F.2d 534 (5th Cir. 1990) ...................................................................................30

*Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust,*
463 U.S. 1, 103 S. Ct. 2841 (1983)....................................................................16, 19

*In re Fresh Del Monte Pineapples Antitrust Litigation,*
1:04-MD-1628(RMB), 2005 WL 926970 (S.D.N.Y. Apr. 20, 2005) .........................26

*FTC v. Actavis,*
    133 S. Ct. 2223 (2013) ............................................................................21, 22

*FTC v. Cephalon, Inc.,*
    36 F. Supp. 3d 527, 531 (E.D. Pa. 2014) ...............................................22

*Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co.,*
    260 U.S. 261, 43 S. Ct. 106 (1922) ........................................................15

*Gomez v Bobker,*
    104 A.D.2d 790, 480 N.Y.S.2d 43 (2d Dep't 1984) ................................7

*Graham v. Henegar,*
    640 F.2d 732 (5th Cir. 1981) ...................................................................30

*Holley Equip. Co. v. Credit Alliance Corp.,*
    821 F.2d 1531 (11th Cir.1987) ................................................................28

*Holzman v. Manhattan & Bronx Surface Transit Operating Auth.,* 271 A.D.2d 346, 707
    N.Y.S.2d 159 (1st Dep't 2000) ...............................................................14

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
    153 F.3d 1318 (Fed. Cir. 1998)...............................................................19

*In re Imre B.R. (I.B.R),*
    40 Misc.3d 464, 965 N.Y.S.2d 860 (N.Y. Sup. 2013) ..............................9

*Kimm v. KCC Trading, Inc.,*
    449 Fed. Appx. 85 (2d Cir. 2012) ...........................................................30

*Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP,*
    676 F.3d 1354 (Fed. Cir. 2012)...............................................................24

*Lead I JV, LP v. North Fork Bank,*
    401 B.R. 571 (E.D.N.Y. 2009) ..................................................................6

*Leaumont v. City of Alexandria,*
    No. 1:13-cv-02397, 2013 WL 5426013 (W.D. La. Sept. 26, 2013) .........16

*In re Lehman Bros. Sec. and ERISA Litig.,*
    09 MD 02017(LAK), 2012 WL 983561 (S.D.N.Y. 2012) .......................18

*Lerner Stores Corp. v. Parklane Hosiery Co., Inc.,*
    86 Misc. 2d 215, 381 N.Y.S.2d 968 (N.Y. Sup. 1976) ...........................22

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
2002 WL 31509881 (S.D.N.Y. Nov. 6, 2002).............................................................6

*Mannsfeld v. Phenolchemie, Inc.*,
466 F. Supp. 2d 1266 (S.D. Ala. 2006)....................................................................19

*Martin v. Franklin Capital Corp.*,
546 U.S. 132, 126 S. Ct. 704 (2005)........................................................................32

*Matter of El Greco Soc. of Visual Arts v. Diamantidis*, 2008,
47 AD.3d 929, 852 N.Y.S.2d 165 (2d Dep't 2008)................................................7, 10

*Morilla v. Laser Spine Inst.*, LLC,
2:10-cv-01822 (WHW), 2010 WL 3258312 (D.N.J. Aug. 16, 2010).........................30

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344, 119 S. Ct. 1322 (1999).............................................................. passim

*Noel v. J.P. Morgan Chase Bank N.A.*,
918 F. Supp. 2d 123 (E.D.N.Y. 2013) .....................................................................19

*Pietrangelo v. Alvas Corp.*,
686 F.3d 62 (2d Cir. 2012).......................................................................................13

*Pullman Co. v. Jenkins*,
305 U.S. 534, 59 S. Ct. 347 (1939)..........................................................................15

*Smith v. New York County District Attorney's Office*,
104 A.D. 3d 599, 960 N.Y.S.2d 646 (1st Dep't 2013) .............................................10

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555, 51 S. Ct. 248 (1931)..........................................................................21

*In re Time Warner Inc. Set-Top Cable Television Antitrust Litig.*,
No. 08 Civ. 7616(PKC), 2010 WL 882989 (S.D.N.Y. Mar. 5, 2010).......................15

*Travelers Indem. Co. v. Sarkisian*,
794 F.2d 754 (2d Cir. 1986).....................................................................................19

*U.S. Valves, Inc. v. Dray*,
212 F.3d 1368 (Fed. Cir. 2000).................................................................................19

*Universal Motors Grp. Of Companies, Inc. v. Wilkerson*,
674 F. Supp. 1108 (S.D.N.Y. 1987).....................................................................11, 12

*Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*,
  63 A.D.2d 244, 407 N.Y.S.2d 287 (4th Dep't 1978)...............................................21

*Vassilatos v. Del Monte Fresh Produce Co.*,
  04-80450-Civ-MIDDLEBROOKS/JOHNSON, 2004 U.S. Dist. LEXIS 22123 (S.D. Fla. July
  23, 2004) ...................................................................................................26

*Vera v. Saks & Co.*,
  335 F.3d 109 (2d Cir. 2003).........................................................................15

*Way v. Goord*,
  15 A.D. 3d 741, 790 N.Y.S.2d 248 (3d Dep't 2005) ...................................8

*Whitaker v. American Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001)...............................................................6, 11, 12

*William Ryan Homes of Wisconsin, Inc. v. Heritage Development of Wisconsin*,
  No. 05-C-981, 2007 WL 1960625 (E.D. Wis. June 29, 2007) ....................13

*Williams v. Del Monte Fresh Produce, Inc.*,
  325 F. Supp. 2d 855 (M.D. Tenn. 2004) .....................................................26

*Zeballos v. Tan*,
  06 Civ. 1268 (GEL), 2006 WL 1975995 (S.D.N.Y. Jul. 10, 2006)...............6

*Zenith Elecs. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999).....................................................................25

*Zenith Radio Corp. v . Hazeltime Research, Inc.*,
  395 U.S. 100, 89 S. Ct. 1562 (1969)............................................................21

## STATUTES AND RULES

15 U.S.C. § 1 ..................................................................................................15

15 U.S.C. § 2..............................................................................................14, 16

15 U.S.C. § 15(a) ...........................................................................................15

28 U.S.C. § 282...............................................................................................20

28 U.S.C. § 1331..............................................................................................14

28 U.S.C. § 1332(a) ........................................................................................27

28 U.S.C. § 1338(a) ........................................................................................19

28 U.S.C. § 1441 ..........................................................................................................19, 27

28 U.S.C. § 1446 .............................................................................................................. passim

28 U.S.C. § 1447 ...................................................................................................................2

Class Action Fairness Act 2005, 28 U.S.C. § 1332(d) ...........................................32

CPLR § 304.............................................................................................................................7, 10

CPLR § 305(a) .......................................................................................................................8

CPLR § 306-b........................................................................................................................7, 8

CPLR § 311.............................................................................................................................12

CPLR § 312-a(a)...................................................................................................................12

CPLR § 403(b) and (c)........................................................................................................7, 8

CPLR § 3102(c) .................................................................................................................. passim

N.Y. Gen. Bus. L. § 340(5).................................................................................................29, 30

## MISCELLANEOUS

Ian Simmons, Kenneth R. O'Rourke & Scott Schaeffer, *Viewing FTC v. Actavis Through the
Lens of Clayton Act Section 4*, 28 Antitrust 24 (Fall, 2013) ......................................21

14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3712 (4th ed.)................31

Future of Reverse Payment Cases at 15-16 (September 26, 2013), *available at*
http://www.ftc.gov/sites/default/files/documents/public_statements/ftc-v.actavis-future-
reverse-payment-cases/130926actavis.pdf..................................................................................23

Judiciary of New York, How to Commence a Special Proceeding, at 2, *available at*
https://www.nycourts.gov/courts/6jd/forms/SRForms/sp_howtocommence.pdf.........................9

## PRELIMINARY STATEMENT

Teamsters Local 404 Health Services & Insurance Plan ("Petitioner") speculates that a settlement agreement resolving patent litigation between Respondents King Pharmaceuticals, Inc. ("King")[1], Meridian Medical Technologies, Inc. ("Meridian"), and Pfizer Inc. ("Pfizer" and collectively the "Respondents") and a generic pharmaceutical manufacturer may contain a "reverse payment" and may violate the antitrust laws. Petitioner, however, *admittedly* has no evidence to support such speculation. Petitioner thus commenced these proceedings in New York State Supreme Court under CPLR § 3102(c) to try to obtain documents that would allow it to determine *whether* it has a basis for an antitrust lawsuit. The Petition, however, makes clear through, among other things, its repeated invocation of *federal* antitrust law in setting forth its purported causes of action, that any such lawsuit inevitably would be filed in or removed to federal court. Petitioner thus has impermissibly sought to use a New York State pre-complaint discovery mechanism to engage in exactly the kind of fishing expedition the Federal Rules of Civil Procedure firmly prohibit, for a civil action falling clearly within the jurisdiction of the federal courts. Respondents, accordingly, removed these proceedings to federal court where they belong, and separately moved to dismiss the proceedings on the basis that the discovery sought is not permitted under the Federal Rules.

Petitioner now asks this Court to remand this matter back to state court on the grounds that the removal was untimely and that this Court does not in fact have jurisdiction. But in so arguing, Petitioner ignores controlling authority, including U.S. Supreme Court precedent, fails to address in any meaningful way the cases cited by Respondents in the Notice of Removal and,

---

[1] Petitioner names King Pharmaceuticals, Inc. as a Respondent in these proceedings. In 2012, however, King Pharmaceuticals, Inc. became King Pharmaceuticals, LLC. Notice of Removal of Action from State Court Pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 1441, 1446 & 1454 ("Notice of Removal") ¶ 28 (Jun. 16, 2015), ECF 1.

remarkably, asks this Court turn a blind eye to Petitioner's own repeated claims of violations of *federal* statutes in the Petition. As explained below, these proceedings were properly removed and fall squarely within the jurisdiction of this Court on multiple grounds. The Motion for Remand should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The EpiPen[®] AutoInjector is an auto-injector for an emergency dose of epinephrine during an extreme allergic reaction, such as to head off anaphylactic shock. Declaration of Patrick J. Coughlin in Support of an Order to Show Cause for Pre-Complaint Discovery of King Pharmaceuticals, Inc., Meridian Medical Technologies, Inc., and Pfizer Inc. Pursuant to CPLR § 3102(c) ("Coughlin Decl.") ¶¶ 4, 6 (April 30, 2015); Teamsters Local 404 Health Services & Insurance Plan's Memorandum of Law in Support of Remand Pursuant to 28 U.S.C. § 1447 ("Pet'r's Mem.") at 4 (July 15, 2015). Meridian developed and manufactured EpiPen[®] and obtained U.S. Patent Nos. 7,449,012 B2 (the "'012 patent") and 7,794,432 B2 (the "'432 patent"), which cover the product. Pursuant to the federal Hatch-Waxman Act, generic manufacturer Teva Pharmaceuticals ("Teva") sought approval from the Food and Drug Administration to commercialize a generic form of EpiPen[®] prior to the September 11, 2025 expiration of the '012 and '432 patents. Coughlin Decl. ¶ 29; Pet'r's Mem. at 5. King and Meridian thereafter sued Teva for patent infringement in August 2009, under procedures established by the Hatch-Waxman Act, in the U.S. District Court for the District of Delaware. Coughlin Decl. ¶¶ 18, 26; Pet'r's Mem. at 5. King and Meridian asserted infringement of the '012 patent, and later added a claim that Teva infringed the '432 patent. As Petitioner concedes, at the end of a four-day bench trial, the district court judge urged the parties to negotiate a

2

settlement.  Coughlin Decl. ¶ 31; Pet'r's Mem. at 1, 5.  The parties settled in April 2012 before a decision was rendered by the district court.

Petitioner is a Massachusetts company purporting to provide prescription drug coverage for patients in Georgia, Massachusetts, New York, Ohio, New Jersey, North Carolina, and Rhode Island.  Petitioner wants to know whether it has a so-called "reverse payment" challenge to the King-Teva settlement, and thus invoked CPLR § 3102(c) seeking a copy of the settlement in hopes of bringing a suit that undoubtedly would proceed, if anywhere, in federal court.  *See* Coughlin Decl. ¶¶ 22, 35-41.  Petitioner repeatedly invokes the federal Sherman Act in describing its would-be complaint.  On April 30, 2015, Petitioner filed a petition in New York state court seeking pre-action disclosure of the settlement under CPLR § 3102(c).  On June 16, 2015, Respondents removed the proceedings to this Court on the grounds that Petitioner's purported causes of action give rise to federal court jurisdiction.  On June 25, 2015, Respondents moved to dismiss the proceedings on the grounds that the discovery sought by Petitioner is not permitted under the Federal Rules of Civil Procedure.

## ARGUMENT

### I.   PETITIONER'S CPLR § 3102(c) PETITION WAS TIMELY REMOVED TO THIS COURT UNDER 28 U.S.C. § 1446(b)

Petitioner erroneously contends that the removal of these proceedings was untimely, arguing that the thirty-day window for removal under § 1446(b) was triggered by service of the Petition on May 5, 2015.  Pet'r's Mem. at 10.  This argument fails for at least two independent reasons.

*First*, Petitioner's interpretation of § 1446(b) is incorrect as a matter of law.  Under controlling U.S. Supreme Court authority, the act triggering the time period for removal under §

1446(b) is *formal service of process*, and under the CPLR, formal service of process for a special proceeding requires service of a petition *and* signed order to show cause or notice of petition.  As explained in the notice of removal, that event did not occur until May 22, 2015.  Notice of Removal ¶ 12 ("thirty-day period for removal does not begin until service has occurred or is waived" quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56, 119 S. Ct. 1322, 1328-29 (1999)).

*Second*, even if Petitioner were correct as to the law (it is not), Petitioner's attempt to serve the Petition on May 5, 2015 was defective and this deficiency was not corrected until Respondents accepted service on May 22, 2015.  On either basis, therefore, the removal was timely.

### A.     The Time To Remove Petitioner's CPLR § 3102(c) Special Proceeding Was Triggered By Formal Service Of The Petition And Order To Show Cause

The federal removal statute, 28 U.S.C. § 1446, provides in relevant part that:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).

In *Murphy Bros.*, the U.S. Supreme Court squarely held that the 30-day removal period under 28 U.S.C. § 1446(b) is triggered by "either the simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, *but not by mere receipt of the complaint unattended by any formal service*."  *Id*., 526 U.S. at 347, 119 S. Ct. at 1325 (emphasis added).  There, the plaintiff had

4

commenced an action in state court by filing a complaint, but it did not serve the defendant with process at that time. *Id*. at 348, 1325-26. Instead, the plaintiff *faxed* the defendant a copy of the file-stamped complaint three days after filing. *Id*. The parties then engaged in settlement discussion until the plaintiff formally served the defendant in accordance with local law approximately one week later. *Id*. The defendant removed the case to the district court 30 days after formal service of process, but 40 days after receiving the faxed copy of the filed complaint. *Id*. The plaintiff moved to remand the action and, like Petitioner here, argued that the time for removal began when the defendant first informally received a copy of the complaint. *Id*.; Pet'r's Mem. at 10. The Supreme Court rejected the argument, holding that the time period under the removal statute is triggered only by formal service of process.

From the very outset of the opinion, the Court's analysis of § 1446(b) was guided by the concepts of personal jurisdiction and formal service of process:

> We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, *by formal process*.

*Murphy Bros.*, 526 U.S. at 347-48, 119 S. Ct. at 1325 (emphasis added). The Court went on to explain the "fundamental" role played by service of process "on any procedural imposition" placed on a defendant under "longstanding tradition in our system of justice," noting that "[b]efore a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. . . . [O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or *other authority-asserting measure* stating the time within which the party served must appear and defend." *Id*. at 350,

1327 (internal quotations omitted, emphasis added).  With these principles in mind, the Court concluded that:

> [I]t would take a clearer statement than Congress has made to read its endeavor to extend removal time (by adding receipt of the complaint) to effect so strange a change – to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before service of a summons, *i.e.*, before one is subject to any court's authority.

*Id*. at 356, 1327.

This fundamental principle, that official service of process "function[s] as the *sine qua non* directing an individual or entity to participate in a civil action," *id*. at 351, 1327, has been restated time and again by federal courts, including courts in this District, when called upon to address whether a removal was timely.  *See Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 2002 WL 31509881 (S.D.N.Y. Nov. 6, 2002) ("The Second Circuit has interpreted *Murphy Bros*. to hold that 'the commencement of the removal period [can] only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading.'") (quoting *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 202 (2d Cir. 2001)); *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 576 (E.D.N.Y. 2009) ("[I]t is well-settled that the time to file a notice of removal under § 1446(b) is not triggered until service of the initial pleading has been *properly effectuated*.") (emphasis added); *Zeballos v. Tan*, 06 Civ. 1268 (GEL), 2006 WL 1975995 (S.D.N.Y. Jul. 10, 2006) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by *formal process*.") (emphasis in original).

Under these well-established principles, Respondents' time to remove these proceedings did not begin to run until May 22, 2015, the date on which Respondents formally accepted

service of the Petition and signed Order to Show Cause. This is because, in a special proceeding under the New York CPLR that proceeds by way of order to show cause, the state court cannot exercise jurisdiction over the respondent unless and until the respondent has been served with the signed order to show cause.

CPLR § 306-b provides, in relevant part, that "[s]ervice of the summons and complaint, summons with notice, third-party summons and complaint, or petition *with a notice of petition or order to show cause* shall be made within one hundred twenty days after commencement of the action or proceeding," (i.e., here, the filing of the petition) (emphasis added). If service is not made upon a defendant within that time period, "the court, upon motion, shall dismiss the action without prejudice as to that defendant," or extend the time for service upon a showing of good cause. *Id.* CPLR § 403(b) further provides that where a special proceeding is commenced by way of order to show cause, the signed order must be served at a time and in a manner specified in the order to show cause itself. Failure strictly to comply with these rules results in a lack of personal jurisdiction over the defendant. *See Correnti v. Suffolk County Dist. Attorney's Office*, 34 A.D. 3d 578, 579, 824 N.Y.S.2d 382, 384-85 (2d Dep't 2006) ("the mode of service provided for in the order to show cause is jurisdictional in nature and must be literally followed"); *Matter of El Greco Soc. of Visual Arts v. Diamantidis*, 2008, 47 AD.3d 929, 852 N.Y.S.2d 165 (2d Dep't 2008) (petition dismissed because "service was not properly or timely completed in compliance with the provisions of the order to show cause"); *Gomez v Bobker*, 104 A.D.2d 790, 480 N.Y.S.2d 43 (2d Dep't 1984) ("In a special proceeding, personal jurisdiction is acquired by service of a notice of petition or an order to show cause (CPLR 304)."); *see also* Vincent C. Alexander, Practice Commentaries ("Practice Commentaries") C304:1 ("Service of process – the

acquisition of jurisdiction over the defendant – is a follow-up procedure, the timing of which is governed by CPLR 306-b."); *id.* C403:2 ("After the filing, the index number and date of filing must be inscribed on the face of the notice of petition (or order to show cause) (CPLR 305(a)), and service of the process (petition and notice of petition or order to show cause) must be made in accordance with CPLR 403(b) and (c) *so that jurisdiction can be acquired over the respondent*.") (emphasis added).

Service of a petition alone (without an accompanying signed order to show cause) is deficient because it provides no notice to the adverse party as to when it must appear and otherwise respond to the matters set forth in the petition. *See* Practice Commentaries C403:2 ("Service of either the petition alone or a notice of petition alone has been held to be a *jurisdictional defect*." (emphasis added)). Nor does service of a *proposed but unsigned* order to show cause provide a basis for personal jurisdiction. *Way v. Goord*, 15 A.D. 3d 741, 790 N.Y.S.2d 248, 248-49 (3d Dep't 2005) (Article 78 proceeding dismissed for lack of personal jurisdiction because service of "unexecuted order to show cause [had] no legal effect").

Based on the principles set forth by the U.S. Supreme Court in *Murphy Bros.*, therefore, the act that invokes the state court's jurisdiction over the respondent and thereby triggers the time to remove a New York state court special proceeding, such as Petitioner's CPLR § 3102(c) proceeding here, is formal service of the petition *and* signed order to show cause. *See Christian, Klein, & Cogburn v. Nat. Assoc. of Sec. Dealers, Inc.*, 970 F. Supp. 276, 278 (S.D.N.Y. 1997) (noting that service of order to show cause or notice of petition is means by which "jurisdiction is acquired" and removal statute is triggered for CPLR § 3102(c) proceeding).

Any other rule would, at a fundamental level, be unfair to the responding party.  When a party files a petition in New York state court and asks the court to issue an order to show cause, there is no guarantee that the court will even issue the order.  It is not uncommon for a New York state court judge to find a request to issue an order to show cause deficient and refuse to sign the order.  *See, e.g.*, *Astoria Equities 200 LLC v. Halletts A Dev. Co., LLC*, 47 Misc.3d 171, 177, 996 N.Y.S.2d 516 (N.Y. Sup. 2014); *In re Financial Guar. Ins. Co.*, 40 Misc.3d 1220(A), 975 N.Y.S.2d 709 (Table) (N.Y. Sup. 2013); *In re Imre B.R. (I.B.R.)*, 40 Misc.3d 464, 465, 965 N.Y.S.2d 860 (N.Y. Sup. 2013).  Not surprisingly, therefore, the New York Judiciary expressly cautions members of the public considering whether to initiate a special proceeding by way of order to show cause that "if you choose to commence the special proceeding by filing an order to show cause instead of by notice of petition, *the court is under no obligation to sign the Order to Show Cause*." Judiciary of New York, How to Commence a Special Proceeding, at 2, *available at*   https://www.nycourts.gov/courts/6jd/forms/SRForms/sp_howtocommence.pdf   (emphasis added).  Until a court actually signs the order to show cause, therefore, not only does the potential respondent not know by when he or she must respond to the petition, the respondent does not know whether he or she *will need to respond at all*.  The idea that the respondent's time to remove should, nonetheless, be deemed to run from receipt of a petition, before any court has even determined whether there is any basis to issue an order to show cause, therefore, makes no sense.

Petitioner cites no case holding otherwise or finding the removal of a special proceeding untimely because it was removed more than 30 days after the service of a petition alone, without an order to show cause or notice of petition, and Respondents are aware of none.  Rather,

Petitioner bases its entire argument that the removal was untimely on a 2001 amendment of the CPLR, which provided that special proceedings are commenced by the *filing of a petition*, not the filing of an order to show cause or notice of petition.  Pet'r's Mem. at 11-12; CPLR § 304. The amendment simplified the process for commencing special proceedings – and thus clarified for statute of limitations purposes that a special proceeding is commenced when the petition (not an order to show cause or notice of petition) is filed with the court.[2]  But, the amendment in no way dispensed with the requirement that a petitioner, having commenced a special proceeding, must properly serve the respondent with the petition *and* order to show cause (or notice of petition) for the court to have personal jurisdiction over the respondent.  This is readily apparent from, among other things, post-2001 New York state cases that have dismissed special proceedings for lack of personal jurisdiction where a petitioner failed timely to serve the respondent with a signed order to cause or notice of petition.  *See, e.g., Correnti*, 824 N.Y.S.2d at 384-85; *Matter of El Greco,* 852 N.Y.S.2d 165; *Smith v. New York County District Attorney's Office*, 104 A.D. 3d 599, 560, 960 N.Y.S.2d 646 (1st Dep't 2013).

Petitioner is, of course, correct to note that (then) Judge Sotomayor in *Christian,* which was decided in 1997, relied upon the pre-2001 version of the CPLR in stating that under New York law, a special proceeding "is commenced" by service of an order to show cause or notice of petition.  Nothing in that case, however, turns on this point.  Rather, the court clearly held that because service of the order to show cause or notice of petition is the means by which "*jurisdiction is acquired*" in special proceedings – which, as discussed above, continues to be true post-2001 – service of the order to show cause or notice of petition is the threshold

---

[2] *See* 2 Jack B. Weinstein, Harold L. Korn & Arthur R. Miller, New York Civil. Practice: CPLR ¶ 304.02 (2 ed.).

triggering event under the removal statute.  *See Christian,* 970 F. Supp. at 278 (emphasis added).

As such, *Christian* and the other cases upon which Respondents rely, *see* Notice of Removal at

4-5, are consistent with *Murphy Bros.* and remain good law.

Nor does Petitioner's reliance on *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir.

2001), help its cause.  Pet'r's Mem. at 10.  *Whitaker* did not alter the central holding in *Murphy*

*Bros.* that service of process is the trigger for removability under § 1446(b).  To the contrary,

*Whitaker* restated this principle and merely held that, *where there already has been proper*

*service of process*, the removal statute does not require that the defendant have been served with

a *complaint* to trigger the removal period.  Rather, a summons with notice may be deemed an

initial pleading under § 1446(b) if it contains enough information upon which to determine

removability.  261 F.3d at 202-03.  In other words, there are two independent requirements under

§ 1446(b):   (i) proper service of process; and (ii) an initial pleading that contains enough

information for a defendant to assess whether the action is removable.  *Whitaker* addressed the

second issue and held that the initial pleading need not be a complaint.  It did not, however,

dispense with the first requirement.  Here, by contrast, the question is not whether the Petition

contained enough information upon which to determine removability (it clearly did), but whether

service of the Petition without an order to show cause constituted adequate service of process –

as explained above, it did not.  Petitioner's other case, *Universal Motors Grp. Of Companies,*

*Inc. v. Wilkerson*, 674 F. Supp. 1108, 112 (S.D.N.Y. 1987), is not to the contrary.  There, the

court measured the removal period from the time the defendants were properly served with a

summons and notice.  Like the court in *Whitaker*, the *Universal Motors* court recognized that

where a summons and notice contain enough material to determine if an action was removable, it

could serve as an "initial pleading" under § 1446(b).  In both *Whitaker* and *Universal Motors*, there was no question that the defendant had been properly served with process, unlike here.

Here, the key jurisdictional triggering event required under *Murphy Bros.*, i.e., proper service of process, did not occur in the state court proceedings until May 22, 2015, when Respondents accepted service of the order to show cause signed by Justice James.  Respondents' removal of these proceedings to this Court on June 16, 2015 was, therefore, timely.

**B.      Respondents Were Not Properly Served With The Petition Until They Accepted Service On May 22, 2015**

Even if Petitioner were correct (it is not) that service of a petition by itself can be enough to trigger the time for removal under § 1446(b), Petitioner's argument fails for the independent reason that it did not properly serve all Respondents until May 22, 2015.

Petitioner attempted to serve Pfizer, Meridian and King by mail to their registered agent Corporation Trust Corp. ("CT Corp") on May 1, 2015.  Aug. 3, 2015 Affidavit of Brian Hickman ("Hickman Aff.") ¶¶ 5, 7; Ex. A, C.  CT Corp received copies of the Petition and Coughlin Declaration directed to Pfizer and Meridian on May 5, 2015.  Hickman Aff. ¶ 5; Ex. A.  This purported service did not, however, comport with the CPLR rules governing service of process on a corporation.  CPLR § 311 states, in relevant part, that "[p]ersonal service upon a corporation … shall be made by delivering the process to an officer, director, general agent, cashier or assistant cashier (as defined in cases interpreting this law) or upon any other agent authorized by the corporation to receive service."  *Id*.  While CPLR § 312-a(a) allows for a corporation to be served by first class mail where a special proceeding proceeds via notice of petition, the rule makes no provision for service by mail where a petitioner proceeds by order to show cause.  *Id*. In such circumstances, one must comply with the means of service specified in the order to show

cause itself.  *See, e.g.*, *Correnti*, 824 N.Y.S.2d at 384-85.  Accordingly, Pfizer and Meridian were not properly served with the Petition in this proceeding until Respondents accepted service on May 22, 2015, which is, therefore, the date on which the time for Pfizer and Meridian to remove these proceedings began to run.  June 16, 2015 Gandesha Decl. ¶ 7; Ex. E.[3]

Moreover, even if Petitioner's initial mailing of the Petition to Pfizer and Meridian could somehow be deemed to be adequate service as to those Respondents, CT Corp did not accept Petitioner's attempt to serve King Pharmaceuticals, Inc.  Hickman Aff. ¶¶ 7, 8; Ex. C (noting that CT Corp returned to Petitioner the package of materials addressed to King Pharmaceuticals, Inc. because CT Corp was not authorized to receive service for an entity by that name in Delaware).  Accordingly, King was not formally served until May 22, 2015.  In actions involving multiple parties, the 30-day period for removal under § 1446(b) is governed by "the last-served defendant rule."  *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 65 (2d Cir. 2012); *Barnhart v. Federated Dept. Stores, Inc.*, 04 Civ. 3668(JGK), 2005 WL 549712, at *6 (S.D.N.Y. Mar. 8, 2005).  As such, the time for King to remove these proceedings to federal court did not begin until May 22, 2015, and removal of the proceedings by King on June 16, 2015, therefore, was timely.

## II.    REMOVAL IS PROPER BECASE PETITIONER'S CLAIMS ARISE UNDER FEDERAL LAW

Petitioner argues that even if the removal were timely, this court lacks jurisdiction over the proceedings.  On the contrary, removal here is proper because Petitioner seeks pre-complaint

---

[3] In stating in the Notice of Removal and accompanying declaration that they "were served" with copies of the Petition and Coughlin Declaration on May 5, 2015, Removal ¶ 8; June 16, 2015 Gandesha Decl. ¶ 3, Respondents in no way intended to concede that such service was proper or otherwise effective.  *See William Ryan Homes of Wisconsin, Inc. v. Heritage Development of Wisconsin*, No. 05-C-981, 2007 WL 1960625, *3 (E.D. Wis. June 29, 2007) (finding that statement in notice of removal that defendant was served on a given date was not admission that service was sufficient or adequate).

discovery regarding a cause of action that falls squarely within the jurisdiction of the federal courts. *See Dublin Worldwide Prods.*, 162 F. Supp. 2d at 277 (where a C.P.L.R. § 3102(c) petition seeks pre-complaint discovery for a cause of action that falls within federal jurisdiction, the § 3102(c) 'proceeding' is removable).[4]  Specifically, removal is proper because the purported claims underlying Petitioner's request for pre-complaint discovery are based on alleged violations of the federal antitrust laws and because any state law claims would necessarily require resolution of a substantial question of federal patent law.

### A. Removal Is Proper Under 28 U.S.C. § 1331 Because Petitioner Expressly Invokes Federal Antitrust Law

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.*

This Court has federal-question jurisdiction because the Petition expressly invokes federal antitrust statutes in describing Petitioner's would-be claims:  "The [EpiPen® Patent Settlement] Agreement is designed to maintain Respondents' monopoly *in violation of Section 2 of the Sherman Act*, 15 U.S.C. § 2."  Coughlin Decl. ¶ 36 (emphasis added).  Petitioner further

---

[4] To be entitled to relief under CPLR § 3102(c) a party seeking disclosure must submit a petition that sets forth the cause of action for which discovery is sought.  CPLR § 3102(c) is not meant to be used to determine whether a cause of action exists. *Cohen v. Google, Inc.*, 25 Misc. 3d 945, 948, 887 N.Y.S.2d 424, 425 (N.Y. Sup. 2009) ("[C]ourts traditionally require a strong showing that a cause of action exists" before allowing for pre-complaint discovery under CPLR § 3012(c)); *Holzman v. Manhattan & Bronx Surface Transit Operating Auth.*, 271 A.D.2d 346, 347, 707 N.Y.S.2d 159, 160-61 (1st Dep't 2000) ("Pre-action discovery … cannot be used by a prospective plaintiff to ascertain *whether* he has a cause of action at all.  A petition for pre-action discovery should only be granted when the petitioner demonstrates that he has a meritorious cause of action.").  Respondents emphatically deny that Petitioner has met the standard here because it admittedly has no evidence of the existence of a so-called "reverse payment."  Among other things, Petitioner offers only speculation that there *must* have been a reverse payment because otherwise Teva's generic would have entered sooner.  Coughlin Decl. ¶ 33.  Such speculation is hardly sufficient to satisfy the requirements of CPLR § 3102(c).

alleges that "[t]he [EpiPen® Patent Settlement] Agreement *also constitutes a violation of Section 1 of the Sherman Act*, 15 U.S.C. § 1." Coughlin Decl. ¶ 37 (emphasis added). Petitioner thus plainly claims that the Agreement may violate the federal Sherman Act.[5] Coughlin Decl. ¶¶ 9, 36-38. Federal courts have exclusive jurisdiction over such causes of action. *See* 15 U.S.C. §§ 15(a), 26; *Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co.*, 260 U.S. 261, 287, 43 S. Ct. 106, 117 (1922) (federal antitrust laws exclude state court jurisdiction over federal antitrust claims); *In re Time Warner Inc. Set-Top Cable Television Antitrust Litig.*, No. 08 Civ. 7616(PKC), 2010 WL 882989, at *2 (S.D.N.Y. Mar. 5, 2010) ("Federal question jurisdiction is properly invoked because plaintiffs' claims arise under the federal antitrust laws."); *Commonwealth Elec. Inspection Servs., Inc. v. Town of Clarence*, 6 A.D.3d 1185, 1185-86, 776 N.Y.S.2d 687, 688 (4th Dep't 2004) ("Federal antitrust claims are within the exclusive jurisdiction of the federal courts," collecting cases).

Petitioner's attempt in its Motion for Remand to defeat removal by disavowing or minimizing these clear and express invocations of federal law should be rejected. *See* Pet'r's Mem. at 16-17. Petitioner's claim "must be evaluated, and the propriety of remand decided, on the basis of the record *as it stands at the time the petition for removal is filed*." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 349 (1939) (emphasis added). It is the nature of the allegations *as pleaded* – not as later recharacterized by the plaintiff – that determines whether removal was proper. *See Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) ("[A] motion to remand is evaluated on the basis of the allegations *as pleaded at the time of removal*.") (emphasis added); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09,

---

[5] Respondents, of course, expressly deny these allegations.

108 S. Ct. 2166, 2174 (1988) (court looks to the face of a "well-pleaded complaint" to determine whether a cause of action is created by federal law) (citing *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S. Ct. 2841, 2856 (1983)).   Here, Petitioner's pleading expressly claims multiple potential violations of a federal statute.  *See, e.g.*, Coughlin Decl. ¶ 36. ("The [EpiPen® Patent Settlement] Agreement is designed to maintain Respondents' monopoly in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.").

Even if Petitioner's post-pleading disavowals could somehow be considered by the Court, moreover, they fail on their own terms.  Petitioner asserts that the references to the Sherman Act in its Declaration were merely "to demonstrate the meritorious nature of the state law antitrust claims" and to show "that the state laws are entirely consistent with federal law."  Pet'r's Mem. at 16.  Nothing in the Petition or Coughlin Declaration, however, supports this assertion.  Rather, Petitioner must be held to the words of its own petition, which states in no uncertain terms that it believes the King-Teva settlement may violate *federal* antitrust law.  *Compare Leaumont v. City of Alexandria*, No. 1:13-cv-02397, 2013 WL 5426013, *2 (W.D. La. Sept. 26, 2013) (rejecting argument that reference to Americans with Disabilities Act was merely for purpose of interpreting state law claims because it is "not uncommon for plaintiffs claiming employment discrimination to allege violations of both the ADA and [state discrimination law].").  Nowhere does the Petition or the Coughlin Declaration ever expressly state that Petitioner intends to bring *only* state claims.  Rather, in *every* instance in which Petitioner claims that the Agreement may

16

have violated the law, Petitioner claims violations of *both* federal and state laws.  Coughlin Decl. at ¶¶ 9, 35-37.[6]

Finally, Petitioner asserts that it should be "free to ignore the federal question and pitch his claim on the state ground."  Pet'r's Mem.at 17.  Petitioner cannot, however, describe its would-be claims by asserting potential violations of federal law in the Petition and then in a later motion for remand pretend those statements never existed.  As one court explained in a similar circumstance:  "Plaintiff could have avoided the prospect of a federal forum by relying exclusively on state law in the [Complaint].  He instead specifically relied on federal statutes.  Unfortunately for Plaintiff, such reliance is fatal to this argument."  *Fleming v. AC Square, Inc.*,

---

[6] This is entirely consistent with what has become the routine practice of plaintiffs' counsel in cases challenging patent settlement agreements (such as the one at issue here) under *Actavis*, including cases brought by Petitioner's counsel here on behalf of putative classes of indirect purchasers of or end-payors for pharmaceuticals, which frequently assert claims under *both* federal and state antitrust and other laws.  *See e.g.*, Class Action Complaint, *A.F. of L.–A.G.C. Bldg. Trade Welfare Plan v. Boehringer Ingelheim Pharm. GmbH & Co. KG*, No. 3:13-cv-01716-SUR (D. Conn. Nov. 18, 2013), ECF 1 (seeking declaratory and injunctive relief for violations of Sections 1 and 2 of the Sherman Act and damages under various state antitrust, state consumer protection and unfair and deceptive trade practices laws, and unjust enrichment); Class Action Complaint Jury Trial Demanded, *City of Providence, Rhode Island v. Medicis Pharm. Corp.*, No. 2:13-cv-01952-NVW (D. Ariz. Sept. 24, 2013), ECF 1 (seeking declaratory and injunctive relief for violations of Sections 1 and 2 of the Sherman Act and damages under various state antitrust laws and unjust enrichment); Complaint and Jury Demand, *City of Providence, Rhode Island v. Warner Chilcott Pub. Ltd. Co*., No. 1:13-cv-00307-S-PAS (D.R.I. May 2, 2013), ECF 1 (seeking declaratory and injunctive relief for violations of Section 1 of the Sherman Act and damages under various state antitrust, state unfair and deceptive trade practices laws, and unjust enrichment); Complaint and Jury Demand, *City of Providence, Rhode Island v. Abbvie Inc.*, No. 1:13-cv-00292-ML-LDA (D.R.I. April 30, 2013), ECF 1 (same); Class Action Complaint, *A.F. of L.– A.G.C. Bldg. Trades Welfare Plan v. Reckitt Benckiser, Inc.*, No. 1:13-cv-00043-jgm (D. Vt. Mar. 11, 2013), ECF 1 (seeking declaratory and injunctive relief for violations of Sections 1 and 2 of the Sherman Act and damages under various state antitrust, state unfair and deceptive trade practices laws, and unjust enrichment).

No. 5:11-cv-01830 EJD (PSG), 2011 WL 3420595, at *4 (N.D. Cal. Aug. 4, 2011) (denying motion to remand).[7]

An instructive case is *CA 79-3411 Westmoreland Hospital Assoc. v. Blue Cross of W. Penn.*, 605 F.2d 119, 123-24 (3d Cir. 1979).  There, the plaintiffs contended that, even though they referenced federal statutes in their pleading, there was no federal question jurisdiction because their claims could be adjudicated solely by reference to a contract and state laws governing contract interpretation.  The Third Circuit rejected this argument, explaining that the issue of whether federal jurisdiction exists is not addressed on the basis of how a complaint "[c]ould have been structured or of what theory [is] eventually relied upon at trial." *Id.* at 123.  Rather, the court considered its task to "require an examination of 'the face of the complaint' for a federal question." *Id.*  The court concluded that there was federal question jurisdiction because the plaintiffs included in their complaint "*legal conclusions based on federal statutes and regulations*;" it made no difference whether those allegations were actually necessary for the ultimate disposition of the case. *Id.* (adding that "surplusage of federal claims in pleadings is not the test" for whether federal question jurisdiction exists) (emphasis added).  The same is true here.

The cases cited by Petitioner in support of its arguments are inapposite.  None involved express invocations of federal statutes in setting forth the plaintiffs' claims.  Rather, all addressed the issue of what this Court has referred to as "embedded federal question – a federal question that is implicated in what ostensibly is a complaint based on state law . . . ." *Lehman Bros. Sec.*

---

[7] As discussed below, moreover, even if Petitioner were to proceed *solely* with claims brought under the Donnelly Act, such an action would still be properly within the jurisdiction of the federal court because the Donnelly Act claims would necessarily require resolution of a substantial question of federal patent law. *See infra*, § II. B.

*and ERISA Litig.* 09 MD 02017(LAK), 2012 WL 983561, *6 (S.D.N.Y. 2012); *see also Mannsfeld v. Phenolchemie, Inc.*, 466 F. Supp. 2d 1266, *1270 (S.D. Ala. 2006) (plaintiff's state law claims based on misappropriation of trade secrets did not require interpretation of federal patent law); *Noel v. J.P. Morgan Chase Bank N.A.*, 918 F. Supp. 2d 123, 124 (E.D.N.Y. 2013) (plaintiff "neither pled nor cited any federal law in support of his claims . . ."); *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754 (2d Cir. 1986) (holding only that plaintiff's state law claim should not be "recharaterized as a federal claim" simply because it arose "out of the same transaction as a prior federal claim" in a different federal lawsuit).  Here, Petitioner explicitly and repeatedly relied on federal statutes and asserted potential violations of federal law in setting forth its claims.  For this reason alone, this Court has original jurisdiction under 28 U.S.C. § 1441.

## B.  Removal Is Proper Under 28 U.S.C. § 1338(a) Because Petitioner Alleges Claims That Arise Under Federal Patent Law

Federal question jurisdiction exists here for the independent reason that Petitioner's claims necessarily give rise to substantial questions of federal patent law.  Federal jurisdiction exists when a plaintiff's "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174; *see also Franchise Tax Bd. of State of Cal.*, 463 U.S. at 13, 103 S. Ct. at 2848 (noting that a case may "arise under" federal law if a "complaint established that [plaintiff's] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties").  Questions regarding the validity or scope of a patent present a substantial issue of federal patent law. *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1330 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v.*

19

*Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).  Here, Petitioner's claims necessarily raise questions regarding the validity and scope of Respondents' EpiPen® patents.

Pfizer holds multiple patents covering EpiPen®, namely the '012 patent and the '432 patent, which do not expire until September 11, 2025 and are presumed to be valid under 28 U.S.C. § 282.  As petitioner concedes, no court has ever held that either of the patents is invalid or unenforceable.  Pet'r's Mem. at 5.  Beginning in August 2009, Pfizer asserted those patents against Teva, which had filed an ANDA seeking approval to market a generic version of EpiPen®.  *See id*.  After a Markman hearing and four day bench trial, the court urged the parties to settle the litigation.  *Id*.  The parties ultimately reached a settlement that permitted Teva to enter the market with its generic EpiPen® in June 2015, ten years prior to the expiration of the EpiPen® patents.  *Id*.  Petitioner speculates that the EpiPen® settlement constitutes an illegal "reverse payment" settlement agreement and claims that in the absence of the settlement, one or more generic versions of EpiPen® could have legally entered the market prior to June 2015.  *Id*. at 6; Coughlin Decl. ¶¶ 32-34.

Section 4 of the Clayton Act, which authorizes private plaintiffs to bring damage claims under the Sherman Act, requires a plaintiff to plead and prove a causal connection between the challenged conduct (here, the Pfizer-Teva Patent Settlement) and the claimed antitrust injury (here, delayed entry of generic EpiPen®).  *Billy Baxter, Inc. v. Coca-Cola Co.,* 431 F.2d 183, 187 (2d Cir. 1970) ("There must be a causal connection between an antitrust violation and an injury sufficient for the trier of fact to establish that the violation was a 'material cause' of or a 'substantial factor' in the occurrence of damage."  (citing *Continental Ore Co. v. Union Carbide & Carbon Corp*., 370 U.S. 690, 702, 82 S. Ct. 1404 (1962)); *Doron Precision Sys., Inc., v.*

*FAAC, Inc.*, 423 F. Supp. 2d 173, 180-181 (S.D.N.Y. 2006) (dismissing Section 1 and 2 claims because alleged conduct did not cause alleged antitrust injury); *see also Zenith Radio Corp. v . Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9, 89 S. Ct. 1562, 1571 n.9 (1969) (antitrust plaintiff must prove "the fact of damage . . . flowing from the unlawful conspiracy"); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562, 51 S. Ct. 248, 250 (1931) (antitrust plaintiff must prove both "the fact" and "the extent" of damage).  This is a necessary element of a private plaintiff's cause of action – without this showing, a private plaintiff cannot recover damages.  It is, moreover, a separate element from the rule of reason analysis in a challenge to a patent settlement agreement under *Actavis*.[8]   As such, to prevail on such a challenge, a private plaintiff must plausibly plead and prove (i) that the settlement constituted an unreasonable agreement, (ii) that the settlement caused the plaintiff injury; and (iii) the amount of its damages.

Petitioner must make the same showing to prevail on its purported claims under New York's Donnelly Act.  *See Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 63 A.D.2d 244, 252, 407 N.Y.S.2d 287, 293 (4th Dep't 1978) ("Plaintiff must allege a causal link to its

---

[8] *See* Aug. 3, 2015 Gandesha Decl. Ex. A (Ian Simmons, Kenneth R. O'Rourke & Scott Schaeffer, *Viewing FTC v. Actavis Through the Lens of Clayton Act Section 4*, 28 Antitrust 24, 25 (Fall, 2013)) ("Private plaintiffs suing under Section 4 of the Clayton Act have an affirmative burden to prove an actual injury. Permitting litigants to substitute the fact and amount of a settlement payment for proof of the validity or scope of a patent effectively allows plaintiffs to rely on a presumption (that the payment amount inversely reflects patent validity and applicability) to answer the central questions of causation and antitrust injury (whether lawful exclusion exists in the "but-for" world). This end-run reasoning does violence to the Clayton Act."); *see also id.* ("Because *Actavis* considered only Section 5 of the FTC Act, it did nothing to alter the Clayton Act's causation and injury requirements. Private litigants must still prove they were injured "by reason of" the reverse-payment settlement. And they must do so by showing that the defendant's actions were the "but-for" and proximate cause of some actual injury. This is not a light burden – plaintiffs are not entitled to any presumptions of injury.")

injury which is direct rather than incidental or remote to have standing to sue."); *Lerner Stores Corp. v. Parklane Hosiery Co., Inc.*, 86 Misc. 2d 215, 217, 381 N.Y.S.2d 968, 969-70 (N.Y. Sup. Ct. 1976) (dismissing complaint where plaintiff failed to allege injury "directly attributable to the violation"), *aff'd*, 54 A.D.2d 1072, 388 N.Y.S.2d 760 (4th Dept. 1976)**;** *see also* Pet'r's Mem. at 16-17 (noting that the New York Donnelly Act is a "little Sherman Act").

To establish causation here, Petitioner must plead and prove that, absent the settlement, Teva would have come to market earlier than the June 2015 date provided in the settlement.  In order to do so, Petitioner must plead and prove, among other things, that Teva's generic product would not have been blocked by Respondents' EpiPen® patents, which do not finally expire until 2025.  In other words, to show that generics would have entered the market absent the settlement agreement, Petitioner must challenge the enforceability, validity, and scope of all the EpiPen® Patents.  So long as Respondents' EpiPen® Patents provided a legitimate right to exclude others from producing and selling EpiPen® or generic EpiPen® beyond Petitioner's alleged period of injury, Petitioner cannot establish that Pfizer's alleged anticompetitive conduct caused its injury.  Adjudication of the requisite element of causation will, thus, necessarily raise substantial questions of federal patent law.

Moreover, any determination of the reasonableness of a patent settlement agreement under the antitrust laws (including the one called for by Petitioner's purported causes of action here) involves consideration of the merits of the underlying patent case, an inquiry that involves questions of federal patent law.  Although the Supreme Court in *FTC v. Actavis*, 133 S. Ct. 2223 (2013), indicated that it may not be necessary in every case to litigate the settled patent case, the *Actavis* Court nonetheless recognized that "patent and antitrust policies are *both* relevant in

determining the scope of the patent monopoly – and consequently antitrust law immunity – that is conferred by a patent." 133 S. Ct. at 2231 (citation and quotation omitted) (emphasis added). *See, e.g.*, *FTC v. Cephalon, Inc.*, 36 F. Supp. 3d 527, 531 (E.D. Pa. 2014) (rejecting contention that the "patent's strength or weakness" is "irrelevant to the antitrust analysis of a reverse payment settlement").[9]

While the *Actavis* decision left the door open for courts to use a number of factors, including the size of the reverse payment, as a proxy for re-litigation of the validity and scope of the patent at issue, nothing in that decision precludes parties from presenting and district courts from considering evidence as to the strength and scope of the patents that were involved in the settlement at issue. Moreover, the California Supreme Court in *In re Cipro Cases I & II*, *No. S198616*, *2015 WL 2125291* (Cal. May 7, 2015) ("*Cipro*"), recently signaled that considerations relating to patent strength and validity are likely to play a fundamental role in the rule of reason analysis of patent settlement agreements. *See Cipro*, 2015 WL 2125291, at *16 (noting that rule of reason assessment of reasonableness of settlement must consider the level of competition that would have existed "if the parties had litigated validity/invalidity and infringement/noninfringement to a judicial determination."). *Cipro*, therefore, teaches that the rule of reason analysis of patent settlement agreements includes consideration of the strengths or weaknesses of the settled patents. Such evidence obviously will require a court to address

---

[9] *See also* Remarks of Joshua D. Wright, Commissioner, Federal Trade Commission, *FTC v. Actavis* and the Future of Reverse Payment Cases at 15-16 (September 26, 2013), *available at* http://www.ftc.gov/sites/default/files/documents/public_statements/ftc-v.actavis-future-reverse-payment-cases/130926actavis.pdf (recognizing that courts will continue to review patent validity in determining the legality of patent settlements after *Actavis*).

substantial questions of federal patent law.[10]

Petitioner ignores all of this and inaccurately contends that patent issues here are only collateral to the claims or will only be raised as affirmative defenses.  Pet'r's Mem. at 16-19. Petitioner is correct that "a federal patent law defense does not . . . 'arise under' patent law . . . ." *Christianson,* 486 U.S. at 809, 108 S. Ct. at 2174.  But that misses the point.  The patent law issues will not arise through the assertion of an affirmative defense, but instead are necessarily raised in connection with the Petitioner's burden to plead and prove the essential elements of its claims.  *See, e.g., Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993); *Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1361 (Fed. Cir. 2012) (federal jurisdiction existed because "under California law [Plaintiff] would have had to prevail on its 'case within a case' and prove that but for the alleged fraud it would have obtained patent rights for its invention").

Likewise, the patent law issues here are not collateral to the underlying cause of action. Plaintiff cites *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998), but that case is

---

[10] This is consistent with observations Your Honor made during a September 26, 2013 hearing before the Judicial Panel on Multidistrict Litigation:

> JUDGE KAPLAN: It sounds to me like you're saying the Supreme Court held in *Actavis* that it's a per se violation of the antitrust laws to settle a patent case.

> MR. SHADOWEN: No, not at all.  It's a rule of reason case where the plaintiff shows, satisfied its burden by showing that an agreement was made to eliminate the risk. And then the defendant could try to justify the agreement on other grounds. So it's a rule of reason.

> JUDGE KAPLAN: Such as that it was a reasonable settlement *given the merits of the patent case, right*?

Aug. 3, 2015 Gandesha Decl. Ex. B (Transcript of Oral Argument, *In re Loestrin 24 FE Antitrust Litig.*, MDL-2472 at 14:23-15:7 (E.D. Pa. Sept. 26, 2013)) (emphasis added).

inapposite because it addressed whether federal law preempted a state law tortious interference claim in which patent law was ancillary to the claim.  *Id*. at 1473.  The patent law issues here are not ancillary but rather go to the very heart of Petitioner's purported cause of action.  *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340 (Fed. Cir. 1999), likewise does not support Petitioner's contentions.  As an initial matter, the case similarly addressed federal preemption of state law claims, not the jurisdictional question raised here.  Moreover, the patent issues in that case had already been resolved by the district court.  *Id*. at 1346 ("The patent claims and defenses (i.e., the claims and defenses regarding infringement, invalidity, and unenforceability of the Zenith patents) raised by the pleadings are no longer at issue in the case.").  Thus, even if the case had addressed the jurisdictional question, the circumstances there were fundamentally different as the issues of patent validity and scope have not yet been adjudicated here.

Petitioner's other cases are factually inapposite because the claims at issue were far different and did not necessarily require resolution of issues of patent law.  For example, Petitioner's citations to *In re Ciprofloxacin Hydrochloride Antitrust Litig.,* 166 F. Supp. 2d 740 (E.D.N.Y. 2001) and *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666 (S.D.N.Y. 2000) are both distinguishable.  Both cases involved alleged alternative theories of liability that each court concluded were wholly independent of patent issues.  *See Cipro*, 166 F. Supp. 2d at 747-48 (stating that "plaintiffs have asserted at least one theory by which they may establish state antitrust violations without resorting to a determination of patent law"); *Altman*, 125 F. Supp. 2d at 675 ("[P]laintiff's alternate theories make it unnecessary to resolve any substantial questions of patent law for plaintiff to prevail.").  For example, in *Cipro* plaintiffs alleged that Bayer would have licensed the product to Barr in the absence of the agreement, thus allowing for earlier

generic entry – under such a claim patent validity would be irrelevant. *Cipro*, 166 F. Supp. 2d at 747-49. Petitioner alleges no such alternative theory here – Petitioner's *only* theory is that if the parties had not settled, generics would have overcome the EpiPen® Patents and Petitioner would not have been injured. *See* Coughlin Decl. ¶¶ 26-35 (noting, *inter alia*, Teva's various non-infringement and invalidity defenses in the underlying patent litigation).

Likewise, *In re Fresh Del Monte Pineapples Antitrust Litig.*, *Conroy*, *Williams*, and *Vassilatos*, cited by Petitioner, Pet'r's Mem. at 14 & n.35, are four related cases arising out of the same set of facts brought by different plaintiffs against the same defendant, and in each case the plaintiffs brought alternative theories and the court found that a determination of patent law was not essential to at least one of those theories. *In re Fresh Del Monte Pineapples Antitrust Litigation,* 1:04-MD-1628(RMB), 2005 WL 926970, at *2 (S.D.N.Y. Apr. 20, 2005) (remand granted because patent law is not essential to each of the indirect purchaser plaintiffs' theories of recovery); *Williams v. Del Monte Fresh Produce, Inc.,* 325 F. Supp. 2d 855, 858 (M.D. Tenn. 2004) (remanding action because "Plaintiff alleges a theory of recovery completely unrelated to any federal question"); *Conroy* v. *Del Monte Fresh Produce, Inc.,* 325 F. Supp. 2d 1049, 1056 (N.D. Cal. 2004) (stating that plaintiff would be "entitled to relief on each and every one of her causes of action without resolution of patent law issues"); *Vassilatos v. Del Monte Fresh Produce Co.,* 04-80450-Civ-MIDDLEBROOKS/JOHNSON, 2004 U.S. Dist. LEXIS 22123, at *9 (S.D. Fla. July 23, 2004) (stating that "[t]here are no predominating issues of patent law necessary to the resolution of this case" and noting that the validity of the patent was not at issue). Moreover, as one court noted, any ancillary patent issues that might arise throughout the course of litigating those cases had already been addressed in a prior adjudication in federal court. *Williams*, 325 F. Supp. 2d at 859. ("Under the principle of *Res Judicata,* the state court could rely on the federal court's findings of fraud, in

relation to these letters, thus alleviating the need to adjudicate the federal question concerning the patent enforcement."). Similarly, in *In re Cardizem CD Antitrust Litig.*, the validity of the patents was not at issue as it is here. 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999) ("Plaintiffs do not question the validity of [Defendant's] patents.").

By contrast, the essential elements of Petitioner's claims here as set forth in the Petition, including the alleged unreasonableness of the settlement and causation, necessarily require resolution of substantial, disputed federal patent law pertaining to the merits and scope of Respondents' EpiPen® Patents. Accordingly, this case falls squarely within this Court's federal question jurisdiction.[11]

### III. PETITIONER'S CPLR § 3102(c) PETITION WAS PROPERLY REMOVED TO THIS COURT PURSUANT TO 28 U.S.C. § 1441(b) BASED ON DIVERSITY OF CITIZENSHIP

Petitioner concedes that there is diversity of citizenship among the parties. Pet'r's Mem. at 19-20. This action is, therefore, subject to federal court jurisdiction if the $75,000 threshold under 28 U.S.C. § 1332(a) has been met.

Petitioner contends that the threshold amount in controversy has not been met because the Petition does not state a claim for damages and seeks only the disclosure of certain documents. Pet'r's Mem. at 19. In *Dublin Worldwide Prod. (USA) v. Jam Theatricals Ltd.*, Judge Rakoff flatly rejected such an argument, basing removal instead on the amount in controversy associated with the *underlying cause of action* for which CPLR § 3102(c) disclosure

---

[11] Respondents note that in its opposition to Respondents' motion to dismiss these proceedings, Petitioner ultimately asks this Court to retain jurisdiction and order the discovery Petitioner originally sought in state court. The entire thrust of that argument contradicts Petitioner's position in its remand motion that this Court *lacks* jurisdiction. *See* Teamster's Local 404 Health & Insurance Plan's Memorandum in Opposition to Respondents' Motion to Dismiss at 5-12 (S.D.N.Y. Jul. 27, 2015); ECF 16.

was sought.   162 F. Supp. 2d 275, 277-78 (S.D.N.Y 2001) ("A request for discovery under C.P.L.R. 3102(c) is therefore ancillary to an existing cause of action that the requesting party proposes to bring, and it is the elements of that civil action, rather than the ancillary discovery request, that should determine removability.").

In Petitioner's Declaration to the state court in support of its § 3102(c) request, Petitioner alleged that "[d]elaying the entry of a generic or alternative self-injectable epinephrine would allow Pfizer and its subsidiaries to retain *millions of dollars in unlawful monopoly profits*." Coughlin Decl. ¶ 8 (emphasis added).  In a transparent attempt to avoid removal, Petitioner now seeks to back-track from these allegations as to the amount in controversy and offers as "evidence" an unauthenticated spreadsheet purporting to show purchases of EpiPen[®] by Petitioner totaling $46,726.99.  Declaration of Michael M. Buchman ("Buchman Decl.")  ¶ 4 (Jul. 16, 2015) Ex. C.  Even this purported evidence of Petitioner's purchases, however, confirms that the threshold jurisdictional amount is easily met.

As an initial matter, Petitioner miscalculates its own data.  When added correctly, the *actual* total of the figures reflected in Exhibit C is $48,870.09, not $46,726.99.  Moreover, Petitioner concedes that this figure represents only purchases made between April 27, 2012 and February 13, 2015.  Petitioner, however, alleges injury through June 2015 or even as late as January 2016.  Coughlin Decl. ¶¶ 32, 35.   Based on Petitioners' data, Petitioner purchased an average of $1,458 of EpiPen[®] products per month between April 27, 2012 and February 12, 2015.  If one extrapolates forward from February 13, 2015, Petitioner purchased a total of $54,702 of EpiPen[®] products from April 27, 2012 through June 16, 2015, the date of removal

(though it should be noted that Petitioner claims that its injuries are on-going).  Coughlin Decl. ¶ 35.

Petitioner alleges that "a generic company typically launches its product at 40%-60% below the branded price."  Coughlin Decl. ¶ 20.  Accordingly, the Petition suggests that, because of the absence of generic competition, Petitioner has paid on average twice as much for EpiPen® products than it would have had generic competition existed during the alleged period of injury.  In other words, the Petition and Petitioner's purported purchase data suggest that Petitioner will claim that it overpaid for EpiPen® by at the very least $27,351.

Under the Donnelly Act, an individual private plaintiff is entitled to recover treble damages – that is, three times the alleged overcharge.  *See* N.Y. Gen. Bus. L. § 340(5) ("[A]ny person who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby . . . .").  Such trebling is, moreover, mandatory.  *Id.*  (" . . . *shall* recover . . . .");  *Asher v. Abbott Labs.*, 737 N.Y.S.2d 4, 4 (1st Dep't 2002) (noting that treble damages under Donnelly Act are mandatory, i.e., non-discretionary and not contingent upon a finding of bad faith).  It is well-settled that where "punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied."  *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991); *see also Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir.1987) (courts must consider punitive damages when determining the amount in controversy unless it appears to a legal certainty that they cannot be recovered); *3CG, LLC v. Textron, Inc.*, 4:11-CV-00880, 2011 WL 3627682, *2 (M.D. Pa. Aug. 16, 2011) (taking into consideration trebling of damages for purposes of diversity jurisdiction where such damages were available based on how

claims were plead); *Morilla v. Laser Spine Inst.*, LLC, 2:10-cv-01822 (WHW), 2010 WL 3258312, *2 (D.N.J. Aug. 16, 2010) (treble damages are to be considered part of the amount in controversy "when plaintiff is not clearly and obviously prevented from recovering" such damages); *CoreComm-ATX, Inc. v. AT&T Corp*., CIV.A. 02-1890, 2002 WL 1023155 (E.D. Pa. May 22, 2002) (taking punitive damages into account, noting that "[w]here the complaint does not contain a demand for a specified amount, the court must make its own appraisal of the claim as pled and assess the reasonable value of the rights being litigated"). Here, three times the amount of potential overcharges based on Petitioner's data is $82,053, which exceeds the threshold amount in controversy required for diversity jurisdiction under § 1332. (Respondents, of course, deny that Petitioner is entitled to *any* amount of damages.)

The Donnelly Act, moreover, provides for mandatory recovery of attorneys' fees. *See* N.Y. Gen. Bus. L. § 340(5) ("[A]ny person who shall sustain damages by reason of any violation of this section, *shall recover* three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, *and reasonable attorneys' fees*.") (emphasis added). The amount of such fees should also be considered when assessing whether the threshold jurisdictional amount exists. *See Kimm v. KCC Trading, Inc.,* 449 Fed. Appx. 85, 85-86 (2d Cir. 2012) (attorneys' fees used to satisfy amount in controversy "if they are recoverable as a matter of right pursuant to statute or contract"); *Graham v. Henegar*, 640 F.2d 732, 736 n. 9 (5th Cir. 1981) (same); *Forest v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534 (5th Cir. 1990) (on motion for remand, court includes attorney's fees to satisfy amount in controversy where claims brought pursuant to statute under which award of attorneys' fees is mandatory); *Animal Science Prods., Inc. v. Seville Flexpack Corp.*, 9:11-CV-55, 2011 WL 2600970 (E.D. Tex. Jun. 29, 2011) (same);

30

14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3712 (4th ed.) ("[W]hen

costs, either of another lawsuit or expenses incurred as a result of the defendant's allegedly

wrongful conduct, are an element of the plaintiff's damage claim as a matter of the applicable

substantive law, they are not the type of costs the jurisdictional statutes exempt from inclusion in

determining whether the amount in controversy requirement has been satisfied.").   In a highly

complex pharmaceutical antitrust case such as this, with multiple issues relating to, among other

things, patent validity, antitrust injury, product market definition, and so on, potential attorneys'

fees alone would likely far exceed the minimum required amount. (Respondents, of course, deny

that Petitioner would be entitled to *any* amount of attorneys' fees.)

Finally, although Petitioner suggests that it has no intention of ultimately bringing a class

action, Petitioner's counsel has brought multiple other cases under the same "reverse payment"

theory, alleging the same type of injury as alleged here, as class actions purportedly on behalf

nationwide classes of end-payors or other indirect purchasers.  *See supra* note 6.   For example,

in *In re Aggrenox Antitrust Litigation*, Petitioner's counsel purports to represent a class

consisting of:

> All persons or entities *in the United States and its territories* who indirectly purchased,
> paid or provided reimbursement for some or all of the purchase price of Aggrenox in any
> form, for consumption by themselves, their families, or their members, employees,
> insureds, participants, or beneficiaries, other than for resale, at any time during the period
> August 2009, through the present and continuing until the anticompetitive effects of
> Defendants' unlawful conduct cease (the "Class Period"). For purposes of the Class
> definition, persons or entities "purchased" Aggrenox if they paid or reimbursed some or
> all of the purchase price.

Aug. 3, 2015 Gandesha Decl. Ex C (Class Action Complaint at ¶ 24, *A.F. of L. – A.G.C. Bldg.*

*Trade Welfare Plan v. Boehringer Ingelheim Pharm. GmbH & Co. KG*, No. 3:13-cv-01716-SUR

(D. Conn. Nov. 18, 2013), ECF 1 (emphasis added)).   If Petitioner were to bring a similar action

31

here, it would be removable under the Class Action Fairness Act 2005, 28 U.S.C. § 1332(d) ("CAFA"), as Petitioner concedes that Respondents and Teamsters are from different states, the putative class is likely to have more than 100 members and less than two-thirds of the proposed class members would likely be residents of New York, the forum state.  Moreover, CAFA's threshold amount in controversy of $5 million would easily be met.  Petitioner alleges that sales of EpiPen® during the relevant time period exceeded $1 billion.  *See* Buchman Decl. Ex. D, *Mylan Posts Higher Profit and Sales*, Wall St. J. (Mar. 2, 2015) (noting that "EpiPen Auto-Injector became Mylan's first $1 billion product."); *see also* Aug. 3, 2015 Gandesha Decl. Ex. D. (Mylan Inc., Form 10-K/A (Amended Annual Report) (Apr. 30 2015) at 15) ("Notably, 2014 marked an important milestone for EpiPen® Auto-Injector, as it became Mylan's first $1 billion product."); *id.* at 16 ("EpiPen® Auto-Injector became Mylan's first product to reach $1 billion in annual net sales.").     Based on these alleged sales, any potential damages claim on behalf of a nation-wide class would likely exceed the $5 million threshold.[12]

## IV.    PETITIONER'S REQUEST FOR COSTS AND EXPENSES SHOULD BE DENIED

Where a removing party has an objectively reasonable basis for seeking removal, a request for costs and attorneys' fees by the non-removing party should be denied.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 711 (2005).  Respondents' removal of these proceedings was based on, among other things, Petitioner's own express and repeated invocations of federal statutes in the Petition, ample support for the proposition that any claims Petitioner purports to assert under state law necessarily raise questions of federal patent law, and

---

[12] Respondents deny that certification of any such class would be appropriate or that any such class would be entitled to damages.

the presence of federal court jurisdiction because of diversity of citizenship (which Petitioner concedes) and the existence of an amount in controversy greater than $75,000 (confirmed through Petitioner's own data, among other things).  Moreover, as shown above, there is ample support, including U.S. Supreme Court authority, for the proposition that Respondents' removal was timely.  For these reasons, Respondents had, *at a minimum*, an objective basis for removing these proceedings to this Court.

<div align="center">

**<u>CONCLUSION</u>**

</div>

For the foregoing reasons, Respondents respectfully request that this Court deny Petitioner's motion for remand and request for costs.


Dated:  August 3, 2015

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/ Robert A. Milne*

Robert A. Milne
Dimitrios T. Drivas
Brendan G. Woodard
Raj S. Gandesha
Kristen O'Shaughnessy
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036
212-819-8200

*Attorneys for Respondents Pfizer Inc., King Pharmaceuticals LLC, and Meridian Medical Technologies, Inc.*

</div>